**UNITED STATES of America, Plaintiff-Appellee,**

v.

**David Lee ZEZOFF, Defendant-Appellant.**

**No. 18040.**

United States Court of Appeals, Seventh Circuit.

June 17, 1970.

---

Elmer Gertz, Wayne B. Giampietro, Chicago, Ill., for appellant.

Frank J. Violanti, U. S. Atty., Springfield, Ill., for appellee.

Before SWYGERT, Chief Judge, PELL, Circuit Judge, and CAMPBELL, Senior District Judge.[1]

PELL, Circuit Judge.

On May 9, 1968, defendant, David Lee Zezoff, was charged in a three count indictment, with uttering and publishing checks drawn upon the Treasurer of the United States with forged endorsements, with knowledge of the forgery, in violation of § 495, Title 18, United States Code. Each count involved a different check. The three counts involved transactions allegedly at two different places.

Zezoff appeared for arraignment before the district court on May 22, 1968, at which time the assistant United States attorney advised the court, in the defendant's presence, that the indictment was in three counts with each count carrying a penalty of $1000 and ten years. Interrogation of the defendant developed the necessity for court-appointed counsel and the court appointed a member of the local bar who thereafter at all material times here involved did represent Zezoff. At the final arraignment on the same day, the assistant United States attorney, prior to the entering of a plea, again in the presence of Zezoff, stated that the charge was in three counts carrying a maximum penalty of $1000 and ten years. Following this statement, the district judge inquired of Zezoff if he understood that. The defendant replied in the affirmative. Thereafter, a not guilty plea was entered.

On February 18, 1969, trial having been set for February 20, 1969, the defendant, his counsel, and the assistant United States attorney appeared before the district judge, at which time Zezoff's counsel indicated that the defendant was present for the purpose of changing his plea from not guilty to guilty as to count I only. At this juncture the assistant United States attorney apprised the defendant that on each of the three counts he faced a possible penalty of $1000 fine and/or ten years in jail and he understood that Zezoff's counsel had discussed that [the penalty] with Zezoff and had also discussed the matter of guilt with him.

The plea of not guilty was withdrawn and the court personally inquired of Zezoff whether he understood what the penalty was and whether knowing the penalty he desired to withdraw his plea

1. Senior District Judge Campbell of the Northern District of Illinois is sitting by designation.

of not guilty and enter a plea of guilty. To these inquiries, the defendant replied in the affirmative. Further interrogation by the court developed that Zezoff had not been compelled by anybody to do as he did, that he did it by himself freely and voluntarily without duress, that he was aware that he had a right to have his case tried before a jury and that he persisted in pleading guilty to count I of the indictment.

The court then accepted the plea of guilty following which the assistant United States attorney referred to witnesses who had identified Zezoff as having cashed the check involved in count I. On the entering of a guilty plea the government moved to dismiss counts II and III of the indictment, which counts were dismissed.

Zezoff and his counsel next appeared before the court on May 27, 1969, at which time the court stated to Zezoff that after studying the probation report, he was going to commit the defendant to the custody of the Attorney General of the United States, under § 4208(b), Title 18, United States Code, for a period of ten years. The court further stated the defendant would be sent to an institution for study for a period of ninety days, at which time he would be returned to the court and the sentence would be corrected to suit the situation in accordance with the recommendation of the study. The court then inquired as to whether there was any reason as to why the sentence should not be pronounced immediately, to which Zezoff, *inter alia,* replied that he admitted his guilt.

On September 25, 1969, Zezoff and his counsel again appeared before the court, at which time the district judge referred to having received the study and recommendation and was reducing the sentence to three years. The United States attorney interjected that since the May 27 sentence was a tentative one the defendant should have the opportunity to offer anything in mitigation before sentence was pronounced. The court accordingly set the sentence aside, following which there was an extended colloquy between the court, Zezoff, and his counsel, during which Zezoff contended that it was his understanding that he would only have to serve the three months. Zezoff admitted that the court had told him that the three months was for examination and that it would then be up to the court to either vacate the sentence, impose the sentence, or reduce the sentence. Zezoff further admitted that the court had on May 27, 1969 sentenced him to ten years. Zezoff's counsel stated that he had explained to Zezoff that he was "down there for ninety days of observation during which time the proper authorities would evaluate him, determine whether or not he was a fit subject for probation." Zezoff again claimed he had no knowledge of the ten year sentence. Subsequent discussion, however, further reflected that he was aware that the court had imposed on May 27, 1969 a sentence of ten years.

Zezoff's counsel stated he did not know what Zezoff was talking about.

The court then entered sentence of three years, that the period of imprisonment theretofore imposed be reduced to three years including time already served and that the defendant would become eligible for parole at such time as the Board of Parole might determine pursuant to § 4208(a) (2), Title 18, United States Code.

During none of the colloquy did Zezoff deny guilt of count I of the indictment, his only contention being that he did not understand there would be any sentence beyond the three month study period as provided for in § 4208(b), Title 18, United States Code. The record is silent as to whether there was any agreement or understanding with regard to the Government's moving to dismiss counts II and III in the event of a guilty plea as to count I.

Zezoff inquired about an appeal and the court, although recognizing that the dispute between Zezoff and his counsel would probably terminate the counsel's services, nevertheless instructed the counsel to file a notice of appeal. This was done.

It is probably significant at this point to observe that, while Zezoff claimed that his understanding (and he was consistently vague) was that he had already served ninety days, there was never any reference whatsoever to the ninety days or three months at the time the not guilty plea was withdrawn and the guilty plea entered on February 18, 1969. The first reference to the so-called study period was more than three months later after the court had received the probation report which had been ordered on February 18, 1969.

There is some question in the record before us as to whether the defendant moved to withdraw his guilty plea in the court below. Failure to do so might well be dispositive of this appeal. However, the district judge at the time of final sentencing, at which time the defendant indicated a desire to appeal, did not advise the defendant of any necessity to move to withdraw his guilty plea and in fact notified the court-appointed counsel to file notice of appeal within ten days. Further, in a subsequent order of the district court denying bail pending appeal, reference was made to the defendant having made "a motion to set aside the sentence and his guilty plea" at the time of the final sentencing.

Inasmuch as there is some record support for the position that a motion to withdraw the guilty plea had been made, even though inartistically, we do not decide under the circumstances of this particular case that a motion to withdraw the guilty plea pursuant to Rule 32 of the Federal Rules of Criminal Procedure was or was not made, or was or was not necessary, but instead turn our consideration to the merits of this appeal.

In his appeal Zezoff appears principally to rely on McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969). The plea of guilty in the case before us, however, was entered on February 18, 1969 and the decision date of McCarthy was April 2, 1969. The Supreme Court, in a *per curiam* decision, more than a month after the decision in McCarthy, expressly held that McCarthy would not be applied retroactively to guilty pleas which had been entered prior to the decision date of McCarthy. Halliday v. United States, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969).

The court in *Halliday* recognized that the guidelines handed down in *McCarthy* had been previously followed by only one circuit; that over eighty-five percent of all convictions in the federal courts are obtained pursuant to guilty pleas and that prior to Rule 11's recent amendment of the Federal Rules of Criminal Procedure not all district judges personally questioned defendants before accepting their guilty pleas. The court recognized that there had been a large number of constitutionally valid convictions that may have been obtained without full compliance with Rule 11 and held "that only those defendants whose guilty pleas were accepted after April 2, 1969 are entitled to plead anew if their pleas were accepted without full compliance with Rule 11." (Page 833, 89 S.Ct. page 1499).

Zezoff also relies on the still more recent case of Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), which involved a guilty plea in a state court. The *Boykin* case reflected that the judge asked no questions whatsoever of petitioner concerning his plea and the petitioner did not address the court. This is not the situation in the case before us in which we do have a record on which to base a determination of the voluntariness of the guilty plea.

Zezoff, while not denying the non-retroactivity of *McCarthy*, further contends that Smith v. United States, 360 U.S. 1, 79 S.Ct. 991, 3 L.Ed.2d 1041 (1951), also requires a reversal. There are some significant factors, however, in Smith v. United States, *supra*, which are not present in the case before us. In *Smith,* prior to the entry of the plea of guilty, the Government agent, who had previously interviewed the petitioner, had a private, out-of-court audience with the district judge in his chambers at which time he discussed, in the absence of the defendant, the contemplated pro-

ceedings and reported on the alleged crimes of the petitioner. The court of appeals, it is to be noted, found that the judge's mind had become thoroughly conditioned by the interview and the disclosures made to him. In *Smith* the petitioner not only entered a guilty plea but stated he did not wish counsel, that he was willing to waive indictment and be prosecuted under an information. The information immediately filed, counsel and venue were waiver and there was an immediate plea of guilty to the information. Sentence was passed promptly. The precise question before the court in the *Smith* case was whether the petitioner's alleged violation of the kidnapping act had to be prosecuted by an indictment. The court held that it did and the waiver made by petitioners was not binding. The case was disposed of on the indictment point and the court found it unnecessary to reach due process questions presented. Precipitous and telescoped proceedings were involved in *Smith,* which are not involved here; and the *Smith* facts have no particular analogy to the proceedings in the case before us.

Notwithstanding our finding that the cases on which Zezoff relies are not persuasive here, we do not dispose of the pending assertions by Zezoff of a violation of his constitutional rights without a consideration of Rule 11 of the Federal Rules of Criminal Procedure, which was in effect at the time of the guilty plea. Basically, our inquiry is directed toward a determination of whether the plea was voluntarily and knowingly made. Again, we note that there is no apparent assertion by Zezoff that he was not guilty of the crime charged. In *McCarthy,* there was an alleged violation of the Internal Revenue Code involving a "knowing and willful" attempt to defraud the Government. However, McCarthy and his counsel during the sentencing hearing, although pleading guilty, denied willfulness and knowledge, which remarks according to the court indicated a lack of a full awareness of the nature of the charge.

The matter of guilty pleas was again before the Supreme Court in the recent case of Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (May 4, 1970). In *Brady* it is true that at the time the plea was made Rule 11 did not contain the provisions requiring the court to address the defendant personally and to determine that he understood the consequences of his pleading. However, even prior to the 1966 amendment of Rule 11, there was a requirement (which was in effect at the time of the *Brady* plea) that the court should not accept a plea without first determining that the plea was made voluntarily with understanding of the nature of the charge.

■ The *Brady* court recognizes, as do we, that a guilty plea is a grave and solemn act to be accepted only with care and discernment because of the constitutional issues involved. As the court states:

"Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." (Page 748, 90 S.Ct. page 1464)

A review of the record of the cause before us convinces us that Zezoff's plea meets the above standard in which we are fortified by the general discussion of the subject in the *Brady* case, *supra.* Without reviewing the *Brady* decision in detail, suffice it to say that due recognition is given not only to the importance of the protection of constitutional rights in connection with guilty pleas but also to the very significant place occupied by knowledgeable, voluntary guilty pleas in the overall picture of criminal jurisprudence.

■ Finding from the above record that the defendant's plea was voluntary with understanding of the nature of the charge and the consequences of the plea, although not finding whether the proceedings fully complied with the *McCarthy* guidelines, the same not being

here applicable, we find that the defendant's constitutional rights were not violated during the proceeding involving his guilty plea.

Affirmed.