**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Frank P. KENT, Defendant-Appellant.
No. 16356.**

United States Court of Appeals
Seventh Circuit.

June 18, 1968.

Rehearing Denied Aug. 26, 1968.

Julius L. Sherwin, Theodore R. Sherwin, Chicago, Ill., for appellant.

Thomas A. Foran, U. S. Atty., Richard A. Makarski, Asst. U. S. Atty., Edward V. Hanrahan, U. S. Atty., Chicago, Ill., John Peter Lulinski, Gerald M. Werksman, Asst. U. S. Attys., of counsel, for appellee.

Before CASTLE, Chief Judge, and HASTINGS and SWYGERT, Circuit Judges.

SWYGERT, Circuit Judge.

Frank P. Kent appeals from an order of the district court denying his motion made pursuant to 28 U.S.C. § 2255. The motion was filed thirteen days after Kent entered a plea of guilty and was sentenced on five counts of an eight-count information charging him with unlawfully selling and delivering a variety of "depressant or stimulant" drugs in violation of 21 U.S.C. § 331(q) (2). In his

motion, Kent sought to have the judgment of conviction and sentence set aside, to have his plea of guilty withdrawn, and to have a new trial.

After a lengthy hearing in which both Kent and his trial counsel testified, the district judge denied the motion, reciting in detail the reasons for his action. In the course of his oral remarks, the district judge viewed Kent's motion as essentially one seeking leave to withdraw his plea of guilty pursuant to Fed.R.Crim.P. 32(d). Since the other relief Kent requested in his motion would necessarily have been granted if he were allowed to withdraw his plea of guilty, we believe that the district judge properly considered the motion pursuant to Rule 32(d). Kienlen v. United States, 379 F.2d 20, 23 (10th Cir. 1967); Kadwell v. United States, 315 F.2d 667 (9th Cir. 1963); Pilkington v. United States, 315 F.2d 204, 209 (4th Cir. 1963).[1]

Before this court, Kent advances two major contentions. First, he says that he was induced to plead guilty by the conduct of both a deputy United States Marshal and the district judge before whom the case was tried, thereby rendering his plea involuntary.[2] Second, he says that his plea of guilty was accepted by the district judge in violation of Fed.R.Crim.P. 11 in that Kent did not understand either the nature of the charge against him or the range of allowable punishment.

Some background is necessary in order to evaluate Kent's first contention. After an eight-count criminal information was filed against him on January 24, 1967, Kent entered a plea of not guilty to all counts. On June 13, 1967, the trial of the case commenced. A jury was empaneled, and opening statements were made by both the prosecution and the defense. The Government's first witness was James P. Braseth, an agent for the Bureau of Drug Abuse Control, United States Food and Drug Administration. He testified in detail concerning the sale and delivery by Kent to him of a variety of depressant or stimulant drugs, 21 U.S.C. § 321(v)(1). Before Agent Braseth had completed his direct testimony, the court adjourned the trial until the following morning.

Upon the resumption of the trial, a lengthy colloquy ensued, out of the presence of the jury, between the district judge, Kent's counsel, and the assistant United States Attorney.[3] It is on the basis of this colloquy that Kent contends that he was intimidated and coerced by the district judge into pleading guilty, thereby rendering his plea involuntary.

In urging the coercive effect of the district judge's comments during the colloquy, Kent points in his brief to:

[T]he Court's unfavorable reaction to the opening statement for the defendant; that the defendant was confronted with a very serious problem; that while the Court was not telling him how to try his lawsuit, he (defense counsel) had a great responsibility; that criminal lawyers had an erroneous impression about the law of entrapment; that it isn't easy to persuade a jury as to proof of entrapment; that it isn't easy to convince the Court that he is required to give an entrapment instruction; that the case could be quickly disposed of if it were tried without a jury; that there was an erroneous impression around that transactions with an agent are per se entrapment; that on the contrary it is more often good police work, good enforcement work; and that in all his years on the Federal bench, that on every occasion he had given an entrapment instruction at the request of the

1. The "manifest injustice" standard for granting relief under Rule 32(d) provides the district court with greater leeway than the standard under 28 U.S.C. § 2255. Hence Kent is not in any way prejudiced by consideration of his post-trial petition under Rule 32(d). If Kent was entitled to the relief he prayed for in his petition, that relief would be granted irrespective of the designation he gave his petition.

2. The same judge passed upon Kent's post-trial petition.

3. Kent was present throughout the colloquy.

defendant the verdict has always been guilty.

Although it is true that the district judge did make some of the comments attributed to him by Kent, these comments cannot be viewed outside the context of the lengthy colloquy in which they were made.

During the colloquy, Kent's attorney indicated a willingness to stipulate concerning certain of the physical exhibits offered into evidence by the Government. The district judge remarked that any stipulations were dangerous and misleading when a case was being tried before a jury. Immediately after this comment, the district judge said, "If this were a case tried without a jury, I think it could be disposed of very quickly." Kent focuses on this statement as conveying the impression that his cause was hopeless. When viewed in context, however, the statement was innocuous. The obvious purport of the district judge's comment was that the case could be tried more expeditiously by the use of stipulations if there were no jury.

With respect to the judge's comments concerning defense counsel's opening statement, as the judge himself said, "I didn't quite understand the position of the defendant as you [defense counsel] stated it to the jury. * * * I like to understand clearly the position taken by a lawyer in the trial of the case." Likewise, the judge's comments concerning Kent's entrapment defense and his proposed instruction on that defense came after Kent's counsel stated, "[W]e are going to confess these facts for the most part." In view of counsel's willingness to admit most of the facts, the judge was merely trying to point out the serious problem facing Kent in claiming entrapment. Instead of attempting to coerce or intimidate Kent or his counsel, the judge sought to offer assistance. That Kent's counsel so viewed the judge's comments appears from his statement that, "I appreciate your talking to us like this. * * * I do believe he [Kent] has gotten a great benefit from hearing you."

Further indications that the district judge's comments, when viewed in their totality, could not reasonably be construed to be intimidating or coercive appear in the record. During the colloquy, the judge on several occasions emphasized that he could reach no conclusion on the entrapment instruction until he heard all the evidence. In addition, he indicated that, "Mr. Kent * * * is as innocent as anyone in the courtroom until he is proven guilty as required by law." Likewise, the judge reiterated his willingness to call back the jury and to continue the trial, emphasizing on one occasion, "You [Kent] are putting the [G]overnment here, as you have a right to do, * * * to the necessity of proving its case, if it can prove its case, as required by law. But if that is what you want, we will try it straight through." Finally, in response to a suggestion by Kent's counsel that the judge "bridge any gap" between opposing counsel, the judge engaged in a lengthy statement in which he unequivocally indicated his view "that it is improper for the Court to negotiate with a defendant accused of a crime."

When viewed in their entirety, we can discover nothing of a coercive or intimidating nature in the district judge's comments. Nor do we believe that a reasonable person in Kent's position would find anything intimidating or coercive in the remarks. The district judge's comments in the instant case, even when viewed in isolation, cannot be compared with those made by the judge in United States v. Tateo, 214 F.Supp. 560 (S.D. N.Y.1963). In *Tateo*, the trial judge had stated in the middle of the trial that he would sentence the defendants to life imprisonment if the trial continued and they were found guilty. Whereas the judge's comments in *Tateo* were found to have coerced a plea of guilty, the judge's comments in the instant case were within the bounds of the discretion vested in him over the control of a trial.

After the colloquy was concluded, the district judge, at the request of Kent's counsel, called a recess to enable Kent and his counsel to confer. According to

the post-trial petition filed by Kent and the affidavit of his trial counsel submitted in support thereof, the actions and statements of deputy United States Marshal Eugene Bissell, occurring during the recess, further induced him to change his plea to guilty. In his petition, Kent alleged that Bissell entered the room where he was conferring with his counsel and engaged in a whispered conversation with him. During the conversation, Bissell allegedly stated that he had talked to the judge about Kent's case, that Kent, Bissell and the judge were all Nobles in Medinah Temple, and that the judge would give Kent a "break" if he pleaded guilty. In addition, Kent alleged that Bissell instructed him to answer in the negative if he were "asked if anybody promised you anything." Bissell then showed Kent his Medinah Temple membership card.

After Bissell left the room and Kent and his counsel concluded their conference, they returned to the courtroom and Kent requested leave to withdraw his plea of not guilty and to plead guilty to the first five counts of the information. Before accepting his plea, the judge, among other things, inquired of Kent whether any representations had been made to him with respect to punishment if allowed to change his plea. Kent responded in the negative.

Both Kent and his trial counsel testified at length concerning this alleged incident with Bissell. Bissell was not called to testify by either Kent or the Government. The Government, however, did submit a sworn affidavit in which Bissell denied making any of the statements attributed to him by Kent.[4]

On the cross-examination of Kent and his trial counsel during the hearing, the assistant United States Attorney elicited several substantial discrepancies between the acts and statements attributed to Bissell in Kent's petition and his counsel's supporting affidavit and their testimony at the hearing concerning these incidents. There were also discrepancies between the facts as testified to by Kent's trial counsel and the facts as testified to by Kent. The only corroboration afforded Kent's allegations by his trial counsel's testimony was that Bissell entered the room and showed Kent his membership card—actions not denied by Bissell in his affidavit. In response to questioning by the judge, Kent admitted at the hearing that he had lied on at least one occasion during the trial. These inconsistencies, falsehoods, and memory lapses assume added significance in view of the very short period of time that elapsed between the alleged occurrence of the Bissell incident and the hearing.

■■ Because of the largely uncorroborated nature of Kent's allegations concerning Bissell, the fact that Kent had lied to the court under oath, and the fact that his petition and his trial counsel's affidavit contained errors and inconsistencies, we believe that the district judge properly chose to disbelieve their accusations against Bissell. In so doing, he did not abuse his discretion as the sole judge of the creditability of witnesses. United States v. Washington, 341 F.2d 277, 9 A.L.R.3d 448 (3d Cir.), cert. denied, sub nom., De Gregory v. United States, 382 U.S. 850, 86 S.Ct. 96, 15 L.Ed.2d 89 (1965).

Kent's second contention is that the district judge, in allowing him to withdraw his plea of not guilty, failed to comply with Fed.R.Crim.P. 11.[5] Specifically, Kent contends that the district

---

4. Bisell did admit that he showed Kent his Medinah membership card.

5. Rule 11 was recently amended to read: A defendant may plead not guilty, guilty or, with the consent of the court, *nolo contendere.* The court may refuse to accept a plea of guilty, and shall not accept such plea or a plea of *nolo contendere* without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea. If a defendant refuses to plead or if the court refuses to accept a plea of guilty or if a defendant corporation fails to appear, the court shall enter a plea of not guilty. The court shall not enter a judgment upon a plea of guilty unless it is satis-

judge did not ascertain whether he understood either the nature of the charge against him or the allowable range of punishment.

When Kent returned from the conference with his counsel and indicated that he desired to withdraw his plea of not guilty, and to plead guilty, the judge said, "Before I permit you to do that, I must tell you some things and ask you some questions." The judge proceeded to read the five counts of the information to which Kent desired to plead guilty. He then inquired, "[D]o you understand fully the nature of the charges . . . ?" Kent replied in the affirmative. With respect to the consequences of Kent's change of plea, the judge said, "I must tell you, . . . that the court could impose a maximum penalty of one year in prison on each of these counts—maximum means the most that I could do—and a fine of $1,000 maximum on each of these counts, or both." Next, the judge asked whether any representations had been made to Kent concerning punishment if allowed to change his plea; Kent replied in the negative. Finally, the judge inquired of Kent whether he was a narcotics user; Kent replied in the negative.

After the judge allowed Kent to withdraw his plea of not guilty and to plead guilty, Kent's counsel moved for a presentence investigation and the United States Attorney moved for a hearing in aggravation. The former motion was denied, and the latter motion was granted. At the conclusion of the testimony in aggravation, Kent's counsel presented matter in mitigation. The judge then granted Kent leave to speak in his own behalf. While Kent was speaking, the judge addressed Kent, saying that he had reviewed with Kent what he was charged with and that Kent had said he understood the charges. Kent replied, "It still stands." Consecutive nine-month terms of imprisonment as well as cumulative fines of $500 were imposed on each of the five counts.

We conclude that there is no merit in Kent's contention that the district judge failed to comply with Rule 11. First, the district judge addressed Kent personally to ascertain whether he understood the nature of the charges against him. The judge had no reason to believe that Kent did not understand in view of his statement that he did and Agent Braseth's trial testimony that Kent had considerable familiarity with the new federal drug laws and their requirements. At the post-trial hearing, Kent's trial counsel testified that he had told Kent of the possible punishment he might receive and that he had read the statute and the information to him. See United States v. Lowe, 367 F.2d 44 (7th Cir. 1966); United States v. Rizzo, 362 F.2d 97 (7th Cir. 1966).

Second, the judge on at least two occasions informed Kent that he could receive a maximum penalty of one year and a $1,000 fine on *each count*. Kent was likewise informed of the possible penalty by his trial counsel. Since Kent was obviously aware that he was pleading guilty to five counts, he could not have misunderstood that the maximum penalty he might receive was five years and $5,000. Kent's statement through his counsel after sentence was imposed that he didn't understand the sentence reflected his disappointment with the sentence he received rather than a failure to understand the possible sentence he could receive. A frustration of hopes after the fact is not equivalent to a failure to understand before the fact. Cf. Trujillo v. United States, 377 F.2d 266 (5th Cir.), cert. denied, 389 U.S. 899, 88 S.Ct. 224, 19 L.Ed.2d 221 (1967); Kotz v. United States, 353 F.2d 312 (8th Cir. 1965).[6]

fied that there is a factual basis for the plea.

6. Since Kent's motion to withdraw his plea of not guilty was made after a substantial portion of the Government's case in chief had been presented, the judge could properly satisfy himself that there was "a factual basis for the plea" as required by Fed.R.Crim.P. 11. Maxwell v. United States, 368 F.2d 735, 739 n. 3 (9th Cir. 1967).

Since the district judge complied with Rule 11, and further, since there was an insufficient showing that Kent was coerced or intimidated into pleading guilty, let alone a showing of "manifest injustice" required under Rule 32(d), the district judge properly denied Kent's motion.

The judgment of the district court is affirmed.