**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**William C. SMITH, Defendant-Appellant.**

**Nos. 18700, 18701.**

United States Court of Appeals,
Seventh Circuit.

March 8, 1971.

Stevens, Circuit Judge, dissented
and filed opinion.

Julius Lucius Echeles, Chicago, Ill., for defendant-appellant.

William J. Bauer, U. S. Atty., Michael D. Marrs, Asst. U. S. Atty., Chicago, Ill., for appellee; John Peter Lulinski, Jeffrey Cole, Asst. U. S. Attys., of counsel.

Before HASTINGS, Senior Circuit Judge, and KERNER and STEVENS, Circuit Judges.

HASTINGS, Senior Circuit Judge.

The only issue raised by these appeals is whether a person who pleads guilty to a charge of a federal narcotics law violation, without knowledge that he will be ineligible for parole from the sentence he receives, enters his guilty plea voluntarily with an understanding of the consequences of such plea.

Defendant William C. Smith was charged in two two-count indictments with violations of the narcotics laws.[1] Desiring to change his plea to Count II of each indictment[2] from not guilty to guilty, defendant was brought before the district court on February 3, 1969. The court questioned Smith to insure that he knew the effects of his plea and that he entered the plea voluntarily without any promises or threats. Smith was informed that he could receive a maximum fine of $20,000 on each count and maximum imprisonment of forty years. The court did not advise Smith that Title 26, U.S. C.A. § 7237(d)[3] would render him ineligible for parole.[4]

The district court accepted Smith's guilty pleas and sentenced him to nineteen years' imprisonment on each count to run concurrently and also concurrent with an existing state-court sentence of twenty to forty years previously imposed for illegal possession of narcotics.

On April 1, 1970, pursuant to Title 28, U.S.C.A. § 2255, defendant filed motions to vacate the judgments of conviction and sentence imposed February 3, 1969. The sole basis for such motions was that the district court failed to advise defendant, as required by Rule 11, Federal Rules of Criminal Procedure, Title 18, U.S.C.A., that as a consequence of his pleas, he would be ineligible for parole.[5] Both motions were denied without an evidentiary hearing and these appeals followed. We reverse.

Rule 11, *supra*, as amended effective July 1, 1966, provides that the court shall not accept a guilty plea "without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature

---

1. Defendant was charged with violations of Title 21, U.S.C.A. § 174 (concerning the buying and selling of narcotic drugs) and Title 26, U.S.C.A. § 4705(a) (concerning the sale of narcotic drugs without the appropriate forms issued by the Secretary of the Treasury).

2. Count II of each indictment charged a violation of Title 21, U.S.C.A. § 174. The remaining two counts were dismissed. Throughout these proceedings, Smith has been represented by privately-retained counsel.

3. Title 26, U.S.C.A. § 7237(d) provides, *inter alia*:

 "(d) No suspension of sentence; no probation; etc.—Upon conviction—
 [of certain offenses including violation of Title 21, U.S.C.A. § 174] * * * in the case of a violation of a law relating to narcotic drugs, section 4202 of title 18, United States Code, [relating

 to the granting of parole], and the Act of July 15, 1932 (47 Stat. 696; D.C.Code 24–201 and following), as amended shall not apply."
 Section 7237 has been repealed by Title III, Controlled Substances Import and Export Act, of the Comprehensive Drug Abuse Prevention and Control Act, section 1101(b) (4) (A), 84 Stat. 1236, *effective May 1, 1971.* Section 1103 of said Act provides that *such repeal shall affect only prospective prosecutions.*

4. A prisoner is normally eligible for parole after serving one-third of his sentence. Title 18, U.S.C.A. § 4202.

5. Defendant alleged in his motions that he was without understanding that one of the consequences of his plea would be ineligibility for parole. There was no allegation that he would have pleaded differently had he had such understanding.

of the charge and the consequences of the plea." The question before us is whether ineligibility for parole is a "consequence" of a guilty plea about which a district court must address the defendant before accepting such plea.

Although several circuits have considered this question, we have not yet determined this precise issue. The Government relies heavily on a case cited by the district court in support of its decision, Smith v. United States, 116 U.S.App.D.C. 404, 324 F.2d 436 (1963), cert. denied, 376 U.S. 957, 84 S.Ct. 978, 11 L.Ed.2d 975 (1964).[6] *Smith* arose from the fourth in a series of § 2255 motions, the effect of which would permit the withdrawal of defendant's plea of guilty to charges of violations of the narcotics laws. Defendant had been sentenced to eight years' imprisonment following his guilty plea, although he could have been sentenced to a maximum of forty years.[7] The basis asserted in his motion was that he was not told by the court, the clerk, court-appointed counsel or anyone else that he would not be eligible for probation or parole if a plea of guilty were entered. On brief, defendant attacked his court-appointed counsel for misleading him by representing that he could receive probation and by the failure to inform him of his ineligibility for parole. In the overall context of an allegation of ineffective assistance of counsel, the court considered the question of whether or not ineligibility for parole is a consequence of a plea of guilty. It characterized parole as a matter of legislative grace and held that noneligibility for parole is a consequence of the withhold-

ing of legislative grace, rather than a consequence of a plea of guilty.

In Munich v. United States, 9 Cir., 337 F.2d 356 (1964), a § 2255 proceeding, the court without citation of authority or supporting reasoning decided that if one is not aware of his ineligibility for parole or probation, he does not plead guilty with an understanding of the consequences of such plea.

The Fifth Circuit first considered this issue in Trujillo v. United States, 5 Cir., 377 F.2d 266 (1967). Trujillo and co-defendant Perez pleaded guilty to two counts of a three-count narcotics indictment. At the sentencing proceeding a week later, the district court, *in the presence of Trujillo*, advised Perez that he would not be eligible for parole. In affirming the district court's denial of the § 2255 motion to vacate the two concurrent ten-year sentences, the court accepted the rationale of *Smith, supra*, and analogized parole ineligibility to such collateral consequences of a guilty plea as loss of passport, deportation, loss of voting privileges and an undesirable discharge from the armed services. *Trujillo, supra* at 268–269.

In Durant v. United States, 1 Cir., 410 F.2d 689 (1969), the First Circuit rejected the rationale of *Smith* and *Trujillo*. In a § 2255 motion to vacate sentence or in the alternative to withdraw his guilty pleas to narcotics charges, Durant alleged that when he pleaded guilty he did not know he would be ineligible for parole; that he was advised by his attorney that parole would be available; and that had he known that parole was unavailable, he would not have pleaded guilty.[8] The

6. *Smith* was decided prior to the amendment to Rule 11 adding the words "and the consequences of [his] plea," which became effective July 1, 1966, but it is quite clear that the court considered the question of ineligibility for parole in terms of a "consequence" of a guilty plea.

7. The court points out in its opinion that Smith was subject to a maximum forty-year sentence and that even if parole were available, such sentence would result in confinement for longer than the eight unparoleable years received. *Smith,*

*supra* at 440. The concurring opinion reasoned that no prejudice resulted to defendant since he did not receive a sentence "substantially greater than the maximum he might reasonably have expected, given the possibility of parole." *Id.* at 442.

8. Durant did not allege that he was not guilty of the charge to which he pleaded, see, Zaffarano v. United States, 9 Cir., 330 F.2d 114, 115 (1964), but the court refused to reach any issue created by such omission since it was basing its de-

court rejected the argument advanced in *Smith* and *Trujillo* that parole is merely a matter of legislative grace which may be administratively granted or withheld and therefore not within the ambit of Rule 11, since such argument failed to distinguish between availability of parole and eligibility for parole. The Congressional removal of all hope for parole was characterized as in the nature of an additional penalty. The court further pointed out that the collateral consequences referred to by the Fifth Circuit in *Trujillo* were all civil in nature, while parole goes directly to the length of time a defendant is to be incarcerated. It then held that ineligibility for parole is a consequence of a guilty plea and a defendant should be advised of such ineligibility prior to the district court's acceptance of a plea of guilty pursuant to Rule 11.

Likewise in Berry v. United States, 3 Cir., 412 F.2d 189 (1969), the court in reversing and remanding with directions [9] the district court's denial of a § 2255 motion to vacate, held that one who is not aware of the fact that he would not be eligible for parole, at the time of entering a guilty plea, does not plead with an understanding of the consequences of such plea. The court reasoned that parole is a concept which our society accepts as a natural incident of rehabilitation during imprisonment. It concluded, therefore, that the effect of ineligibility for parole is an inseparable ingredient of the punishment imposed and such ineligibility translates the term of actual imprisonment into a period three times as long as that ordinarily expected.

The Fifth Circuit was again confronted with the problem in Sanchez v. United States, 5 Cir., 417 F.2d 494 (1969). The court felt compelled to follow its previous decision in *Trujillo, supra,* although it appeared quite reluctant to do so. The court stated at 496–497, "Were the question of parole ineligibility before this Court for the first time, the considerable appeal of these recent decisions [*Durant and Berry*] might persuade us to a like position. * * * This panel being impotent to overrule *Trujillo* we abide and apply its edict."

In Jenkins v. United States, 10 Cir., 420 F.2d 433 (1970), defendant alleged in his § 2255 motion that he was unaware of his ineligibility for probation or parole following his plea of guilty. The district court, relying on the reasoning in *Smith, supra,* denied the motion without an evidentiary hearing. The Tenth Circuit accepted the rationale of *Berry, supra,* and reversed, holding that loss of probation and parole is a consequence of defendant's guilty plea within the meaning of Rule 11.

The latest consideration given by the Fifth Circuit to the proposition in issue occurred in Spradley v. United States, 5 Cir., 421 F.2d 1043 (1970). The district court had accepted defendant's guilty plea at the sentencing hearing, two and one-half weeks after it was entered. At such hearing the court advised the defendant of the mandatory five-year minimum sentence. It then went on to say:

> " '*And that would mean that after you have served one-third of the sentence* if you behave yourself and I don't know any reason why you can't and certainly you have every incentive in the world to behave yourself from now on out.' " *Id.* at 1044.

The court of appeals treated such statement, although unconcluded, as referring to the possibility of parole at the end of twenty months. Following the district court's denial of two Rule 11-based § 2255 motions without evidentiary hearings, the court of appeals reversed, stating, "In short, the First and Third Circuits would say that 'understanding the consequences of a guilty plea' requires a personal explanation of *anything which affects the length of detention*. This ap-

cision on Rule 11. *Durant, supra,* 410 F.2d at 692, n. 8.

9. The district court had held an evidentiary hearing on defendant's motion, but had concluded that defendant had not been prejudiced.

pears to be the better view." *Id.* at 1046.[10] The opinion expressly restricts *Trujillo, supra,* to its bare facts and distinguishes *Sanchez, supra,* because of the trial court's misleading statements to defendant Spradley.

In Harris v. United States, 6 Cir., 426 F.2d 99 (1970), defendant alleged in his § 2255 motion to vacate that the trial judge should have told him that as a result of his plea of guilty to a narcotics offense he would be precluded from parole; that he had no idea that he would receive a sentence that carried no possibility of parole or probation; and that throughout the proceedings he was under the influence of narcotics and could not fully understand the meaning of the questions posed by the trial judge. The trial judge, without a hearing, denied the motion. The court of appeals did not consider defendant's contention regarding the influence of narcotics drugs, but reversed and remanded the trial court's denial since the "defendant indicted for a narcotic offense does not voluntarily plead guilty with knowledge of the consequences of his plea if he is unaware of his ineligibility for parole." *Id.* at 101.

Finally, in Bye v. United States, 2 Cir., 435 F.2d 177 (1970), defendant Bye alleged in his § 2255 motion to vacate that he was unaware of his ineligibility for parole at the time of his plea of guilty to narcotics charges and that had he known, he would not have pleaded guilty.[11] The district court denied such motion without a hearing. The Second Circuit, noting that the purpose of Rule 11 is to insure that a defendant's decision to plead guilty and thereby waive his rights is an informed one and that ineligibility for parole would make the mandatory period of incarceration three times as long, concluded that such a major effect on the length of possible incarceration would have great importance to an accused considering whether or not to plead guilty. The court rejected the rationale in *Smith, supra,* as of "no moment" since "Rule 11 is not concerned with the legislative genesis of the ineligibility for parole, but with the extent to which ineligibility for parole could influence an accused's decision whether to plead guilty." *Id.* at 180. It reversed and remanded, holding that Bye demonstrated a failure in the district court to comply with Rule 11 and that the Government had failed to satisfy its burden of showing that his guilty plea was entered voluntarily with an understanding of the consequences of the plea.

 We agree with the positions taken by the Ninth, First, Third, Tenth, Sixth and Second Circuits, as well as the view expressed by the Fifth Circuit in Spradley v. United States, *supra.* Ineligibility for parole automatically trebles the *mandatory* period of incarceration which an accused would receive under normal circumstances.[12] It necessarily follows that it would have an effect on the expected length of detention and would have primary significance in an accused's determination of whether to plead guilty. The purpose of Rule 11 is to insure that an accused does not plead guilty "except with a full understanding of the charges against him and the possible consequences of his plea." Brady v. United States, 397 U.S. 742, 749 n. 6,

---

10. Even though the guilty plea was entered prior to the making of the incorrect statement by the trial judge, the court said that Rule 11 may apply since the court accepted the plea at the sentencing proceeding. The court held that if Rule 11 did not apply to such proceeding, the defendant was prejudiced because the trial court's statement would have had the effect of removing defendant's motivation to withdraw his plea of guilty, pursuant to Rule 32(d), at a time when such withdrawal would have been freely allowed.

11. In a supporting affidavit, Bye claimed that his attorney advised him that he could be paroled and that he based his decision to plead guilty on such advice.

12. This is true if we ignore allowances for "good time." Even accepting such allowances, the mandatory period of incarceration would be a minimum of twice as long as the accused would receive if he were granted parole.

90 S.Ct. 1463, 1469 n. 6, 25 L.Ed.2d 747 (1970). The procedures therein are designed to assist the trial judge in making his requisite voluntariness determination and to produce a complete record of the factors relevant to such determination at the time the plea is entered. McCarthy v. United States, 394 U.S. 459, 465, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969); United States v. Berlin, 7 Cir., 437 F.2d 901 (1971).

■ Accordingly, we hold that, consistent with the purpose and the procedures of Rule 11, ineligibility for parole is a consequence of a plea of guilty about which a defendant in a narcotics case must be informed pursuant to such rule. In so holding, we reiterate and follow our adoption of the rationale in Berry v. United States, *supra*, in Marshall v. United States, 7 Cir., 431 F.2d 355 (1970), which was concerned with the necessity of informing a defendant of the possibility of consecutive sentences under each count of the indictment pursuant to Rule 11. In that § 2255 proceeding, in speaking for our court Judge Kerner said, at 357–358:

"The Third Circuit in holding that the failure to apprise a defendant, pursuant to a plea of guilty, that the defendant would not be eligible for parole was failure to comply with the dictates of Rule 11, stated:

The mandate of Rule 11, before and after the 1966 amendment is designed to insure that the pleader is made aware of the outer limits of punishment. At the very least, this means that he must be apprised of the period of required incarceration * * *. When one enters a plea of guilty he should be told what is the worst to expect. At the plea he is entitled to no less—at sentence he should expect no more.

Under such circumstances, the knowledge of ineligibility for parole is as necessary to an understanding of the plea as is the knowledge of the maximum sentence possible. Failure to impart this information constituted a failure to explain to the appellant the consequences of his plea. Berry v. United States, 412 F.2d 189, 192–193 (3d Cir. 1969).

See also Durant v. United States, 410 F.2d 689 (1st Cir. 1969). We agree with the court's reasoning in *Berry* * * * *."

■ Appellant has demonstrated a failure by the district court to comply with Rule 11 in accepting his guilty plea. Such plea was entered prior to the date of the decision in McCarthy v. United States, *supra*, holding noncompliance with Rule 11 requires an automatic vacation of the guilty plea, made prospective only by Halliday v. United States, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969). The proper remedy is remandment to the district court for a full evidentiary hearing on Smith's claim that he was without understanding of the consequences of his pleas.

■ ■ The Government contended on oral argument that Smith had such understanding because the actual sentence received by him requires mandatory incarceration within the range of the perceived mandatory periods he might have expected if parole were available. Smith received concurrent sentences of nineteen years and may be released without parole in just under thirteen years if he accumulates full credit for "good time." See Title 18, U.S.C.A. § 4161. Thus it is argued, Smith's expectations, knowing that he could receive a total sentence of forty years and the minimum service under such sentence would be thirteen and one-third years if parole were available, were allegedly not upset.

We disagree. Rule 11 entitles the accused to know the consequences of his guilty plea *prior* to the time of entering it so that he might accurately assess such consequences in making his determination. Hindsight reasoning comparing the actual sentence received with what it might have been does not overcome the risk that an accused will underestimate by a factor of three his period of mandatory incarceration when he makes

such determination. See, Bye v. United States, *supra* at 180; Berry v. United States, *supra*, 412 F.2d at 191; and Durant v. United States, *supra*, 410 F.2d at 691.

The Government has failed to demonstrate from the record that Smith had an understanding of the consequences of his pleas of guilty to the narcotics charges prior to the time he entered such pleas.

For the foregoing reasons, the orders of the district court denying the § 2255 motions of defendant Smith are reversed, and this cause is remanded to the district court for a full evidentiary hearing on such motions and for such other purposes not inconsistent with this opinion as may be appropriate.

Reversed and remanded.

STEVENS, Circuit Judge (dissenting).

Since I find myself out of step not only with respected colleagues but also with a whole parade of recent decisions, I shall explain at some length why I am convinced the parade is marching in the wrong direction. I am persuaded (1) that it is too late for appellant to withdraw his guilty plea unless his constitutional rights have been abridged; (2) that his admission of guilt and waiver of trial were voluntary; (3) that the proceedings which led to the acceptance of his plea were fundamentally fair; and (4) that a defendant is not entitled to know the actual, or even the approximate, period of his confinement before his guilty plea may be accepted.

Ineligibility for parole is merely one factor in an equation determining the total period of confinement; it is illogical to make disclosure of that factor mandatory when neither the final answer, nor other equally important factors in the equation, need be disclosed. Fundamental fairness may require discussion of certain important consequences in specific cases, but a rigid rule that makes a guilty plea vulnerable whenever a trial judge fails to supplement counsel's advice with an enumeration of all significant consequences of the plea is neither necessary to the maintenance of civilized standards of procedure nor desirable.

I.

This appeal is from the district court's denial of a collateral attack on a final judgment. The attack must fail unless the alleged error is constitutional or jurisdictional. Hill v. United States, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417. No jurisdictional issue is raised. In my opinion, the omission of which appellant complains is not of constitutional significance.

A possible violation of the Federal Rules of Criminal Procedure would not, in itself, be sufficient to support a collateral attack on a final judgment pursuant to 28 U.S.C. § 2255. Under Rule 32(d), prior to the imposition of sentence the district court has broad discretion to permit an accused to withdraw a guilty plea. Whether withdrawal is permitted or denied, the exercise of that discretion will seldom be reversed on appeal. Hansen v. Mathews, 424 F.2d 1205, 1209 (7th Cir. 1970). After sentencing the plea may be withdrawn only on grounds of "manifest injustice." [1] A surprisingly

---

1. *"Withdrawal of Plea of Guilty.* A motion to withdraw a plea of guilty or of *nolo contendere* may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea." F.R.Crim.P. 32(d).

In Kercheval v. United States, 274 U.S. 220, 224, 47 S.Ct. 582, 583, 71 L.Ed. 1009, the court stated that " * * *

on timely application, the court will vacate a plea of guilty shown to have been unfairly obtained or given through ignorance, fear or inadvertence." (Emphasis supplied.)

I would interpret Rule 32(d) as requiring timely application, although some courts have apparently taken a different view. See Pilkington v. United States, 315 F.2d 204 (4th Cir. 1963); Smith v. United States, 116 U.S.App.D.C. 404, 324 F.2d 436 (1963). This court has not yet

severe sentence is not a basis for withdrawal.[2] Finally, a departure from the procedures required by Rule 11 may be error requiring reversal on direct appeal, McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418, but does not necessarily raise any question of constitutional significance. Halliday v. United States, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16; United States v. Swaggerty, 218 F.2d 875, 879–880 (7th Cir. 1955).

The 1966 amendment to Rule 11 obviously could not amend the Constitution. Nor was it intended to broaden the avenues of collateral attack on guilty plea convictions. On the contrary, a major purpose of the amendment was to foreclose such attacks by requiring the record to disclose the voluntary character of the defendant's waiver of trial and the trustworthiness of his admission of guilt. See 394 U.S. at 465, 467, 470, 472, 89 S.Ct. 1166. Cases interpreting the 1966 amendment do not answer the constitutional question raised by appellant's collateral attack on his guilty plea. United States v. Zezoff, 428 F.2d 580, 584–585 (7th Cir. 1970).[3]

The reasons for narrowly limiting the grounds for collateral attack on final judgments are well known and basic to our adversary system of justice. Every inroad on the concept of finality undermines confidence in the integrity of our procedures; and, by increasing the volume of judicial work, inevitably delays and impairs the orderly administration of justice. The impact is greatest when new grounds for setting aside guilty pleas are approved because the vast majority of criminal convictions result from

2. decided the timeliness issue under Rule 32 (d), although it is in accord with *Pilkington* in recognizing that the scope of review under the "manifest injustice" standard is broader than the constitutional standard of 28 U.S.C. § 2255. United States v. Kent, 397 F.2d 446, 448 (7th Cir. 1968) cert. denied 393 U.S. 1081, 89 S.Ct. 860, 21 L.Ed.2d 773. Even under the "manifest injustice" standard I would deny relief to appellant (see Part III, infra) particularly since, as I read the Comprehensive Drug Abuse Prevention and Control Act of 1970, he will be eligible for parole in due course. (see Part IV, infra).

2. " * * * But the fact that a defendant, as a result of his plea of guilty, is given a longer sentence than he anticipated furnishes no grounds, even upon appeal from the judgment imposing the sentence, for a reversal of that judgment on the ground that the trial court had refused to permit the defendant to withdraw his plea of guilty. Friedman v. United States, 8 Cir., 200 F.2d 690." United States v. Swaggerty, 218 F.2d 875, 879–880 (7th Cir. 1965); United States v. Kent, 397 F.2d 446, 451 (7th Cir. 1968) cert. denied 393 U.S. 1081, 89 S.Ct. 860, 21 L.Ed.2d 773.

"The substance of the appellants' grievance is that the sentence imposed disappointed their expectations since they thought that by pleading guilty they would get off with a small fine. But such disappointment of expectations affords no valid grounds for granting the relief they sought." United States v. Norstrand Corp., 168 F.2d 481, 482 (2d Cir. 1948).

"Most often, the facts adduced lead the tribunal to the conclusion that the defendant, at the time of entering his plea confidently expected leniency, but without deviation it has been held that this conclusion presented no basis for withdrawal of the guilty plea, even though the defendant was surprised at the severity of the sentence. Williams v. United States, 5 Cir., 1951, 192 F.2d 39; Stidham v. United States, *supra*, [8 Cir., 170 F.2d 294]; United States v. Norstrand Corp., 2 Cir., 1948, 168 F.2d 481; United States v. Colonna, *supra*, [3 Cir., 142 F.2d 210]. So also where there is an expectation that no imprisonment will be imposed. United States v. Denniston, 2 Cir., 1937, 89 F.2d 696, 110 A.L.R. 1296, certiorari denied 301 U.S. 709, [57 S.Ct. 943, 81 L.Ed. 1362]. United States v. Shneer, 194 F.2d 598, 600 (3rd Cir. 1952).

3. *Cf.* Marshall v. United States, 431 F.2d 355, 359 (7th Cir. 1970), in which this court held that the only error reflected by the record was "not of the fundamental kind which can be reached under 28 U.S.C. § 2255 * * *." The scope of review in a collateral attack pursuant to 28 U.S.C. § 2255 is essentially the same as previously available by application for the writ of habeas corpus. United States v. Hayman, 342 U.S. 205, 217, 219, 72 S.Ct. 263, 96 L.Ed. 232.

such pleas. Moreover, the concern that unfair procedures may have resulted in the conviction of an innocent defendant is only rarely raised by a petition to set aside a guilty plea.

Nevertheless, there are cases in which such concern is present, or in which the maintenance of civilized standards of procedure transcends the importance of the guilt or innocence of a particular defendant. Walker v. Johnston, 312 U.S. 275, 286–287, 61 S.Ct. 574, 85 L.Ed. 830. A judgment depriving a person of his liberty is not entitled to judicial respect if it is not the product of due process of law. The concept of finality has no application to such a purported judgment. Brown v. Mississippi, 297 U.S. 278, 287, 56 S.Ct. 461, 80 L.Ed. 682. It may, therefore, be voided regardless of its age and regardless of the guilt of the accused and the possible inability of the government to reassemble proof of such guilt.

The question here is whether appellant is being deprived of his liberty by such a judgment. See Machibroda v. United States, 368 U.S. 487, 493, 82 S. Ct. 510, 7 L.Ed.2d 473.

## II.

There are two basic types of objection to guilty plea convictions which are of sufficient importance to support a collateral attack: (1) that the plea was not made voluntarily; and (2) that, taken as a whole, the arraignment procedures were fundamentally unfair. The majority, following a series of recent decisions, holds that a guilty plea is involuntary if made without knowledge of parole ineligibility. In my opinion it would be more useful to consider whether the omission has made the arraignment procedure fundamentally unfair.

Unless we are to treat the acceptance of a guilty plea and the imposition of a sentence as a negotiated bargain between the accused and the state, I find no connection between advice about parole ineligibility (or other consequences of conviction of comparable importance) and the voluntariness of the plea. The voluntariness issue is unrelated to the fairness of a bargain.[4] On the contrary, it relates to the trustworthiness of the admission of guilt and the binding character of the waiver of the constitutional protections which would be available to the accused if he elected to stand trial.

The requirement that an admission of guilt be voluntary has the same constitutional foundation whether the admission is made in open court or in a police interrogation room.[5] In either setting the accused effectively surrenders his constitutional right to remain silent and to put the government to its proof. The surrender is not voluntary if the accused has no understanding of the alternatives which are available to him. If he admits guilt simply because he is unaware of his right to confront the police and the prosecutor in open court on equal terms, his admission is untrustworthy and constitutionally unacceptable. Lynumn v. Illinois, 372 U.S. 528, 83 S.Ct. 917, 9 L. Ed.2d 922. The Constitution, therefore, imposes a severe requirement of establishing voluntariness before a confession may be received in evidence. Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908. But the most stringent

---

4. "Insofar as the voluntariness of his plea is concerned, there is little to differentiate Brady from (1) the defendant, in a jurisdiction where the judge and jury have the same range of sentencing power, who pleads guilty because his lawyer advises him that the judge will very probably be more lenient than the jury; (2) the defendant, in a jurisdiction where the judge alone has sentencing power, who is advised by counsel that the judge is normally more lenient with defendants who plead guilty than with those who go to trial; ' * * * '" Brady v. United States, 397 U.S. 742, 751, 90 S.Ct. 1463, 1470, 25 L.Ed.2d 747.

5. It is significant that the Supreme Court has cited, without differentiation, guilty plea cases and confession cases in support of the proposition that an admission of guilt must be voluntary. See Brady v. United States, 397 U.S. 742, 748, note 5, 90 S.Ct. 1463; Boykin v. Alabama, 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274.

standards imposed by the Supreme Court in confession cases have never included any suggestion that absence of police advice about the consequences of conviction has any bearing on the voluntariness of an admission of guilt. See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

The "consequences" of the plea of guilty which relate to voluntariness, and therefore have constitutional significance, are consequences of the plea rather than consequences of the conviction.[6] The same punishment may be imposed in consequence of conviction regardless of whether the accused pleaded guilty or not guilty. But the waiver of constitutional protections, which would be available if the defendant elected to stand trial, is a consequence of the plea itself. In order for the plea to be voluntary, the defendant's understanding of the protections he is waiving must be sufficient to guarantee that the waiver is not the product of ignorance, terror, or deception. Boykin v. Alabama, 395 U.S. 238, 243, 89 S. Ct. 1709, 23 L.Ed.2d 274.[7] For that reason, entirely apart from the language of Rule 11, the Constitution requires that the accused understand these consequences of his plea before the waiver of his right to trial and his admission of guilt may be accepted as voluntary. Frame v. Hudspeth, 309 U.S. 632, 60 S.Ct. 712,

84 L.Ed. 989; Waley v. Johnston, 316 U.S. 101, 62 S.Ct. 964, 86 L.Ed. 1302; cf., Johnson v. Zerbst, 304 U.S. 458, 467–469, 58 S.Ct. 1019, 82 L.Ed. 1461.

The consequences of conviction have a different significance. They relate to the wisdom of a decision to plead guilty rather than to the voluntariness of the decision. A variety of factors enter into the exercise of judgment which produces that decision. Among them are counsel's appraisal of the likelihood of a successful defense, the admissibility of critical items of evidence, the question whether the accused can conscientiously make a false denial of guilt, the opprobrium that may result from a public trial, an estimate of the sentence which the judge may impose, and the chance of probation or parole. An erroneous appraisal of any of those factors affects the wisdom of the plea, but does not make it involuntary. Cf., McMann v. Richardson, 397 U.S. 759, 770–771, 773–774, 90 S.Ct. 1441, 25 L.Ed.2d 763.

Although I cannot accept the conclusion that the omission of judicial advice about parole ineligibility renders a guilty plea "involuntary," I recognize the possibility that the omission may nevertheless be of such importance in a particular case that acceptance of the plea would "shock the common man's sense of decency and fair play."[8] A review of the

---

6. This distinction is recognized by state statutory language requiring admonishment as to "the consequences of the plea" and "the maximum sentence" that may be imposed after conviction. See Ill.Rev. Stat. Ch. 38, § 113–4(c) (1969). There are, of course, other consequences of conviction which need not be discussed, e. g., the loss of a passport and the right to foreign travel; eligibility for deportation; the loss of the right to vote; and eligibility for an undesirable discharge from the armed forces. See Trujillo v. United States, 377 F.2d 266, 268–269 (5th Cir. 1967), and cases cited therein.

7. Of course, this proposition does not require a complete explanation of every constitutional protection being waived. See United States v. Berlin, 7th Cir. Jan. 21, 1971, 437 F.2d 901. It merely requires a basic understanding of the right to a fair

trial. See United States v. Davis, 212 F.2d 264, 267–268 (7th Cir. 1954).

8. Burdeau v. McDowell, 256 U.S. 465, 477, 41 S.Ct. 574, 577, 65 L.Ed. 1048 (Brandeis, J., dissenting). This possibility may have affected decisions which have been explained in terms of voluntariness. Thus, in Munich v. United States, 337 F.2d 356 (9th Cir. 1964), which is the only pre-1969 decision supporting the majority's position, there was no colloquy of any kind between the accused and the court and no admonishment of consequences whatever (see p. 360); and in Spradley v. United States, 421 F.2d 1043 (5th Cir. 1970), the court had incorrectly advised the accused, as well as his wife, that he would be eligible for parole after serving one-third of his sentence (see pp. 1044, 1047–1048); it is also of interest that in Durant v. United

record in this case, however, demonstrates that there was nothing unfair about the acceptance of appellant's plea.

### III.

Appellant pleaded guilty to two separate offenses. On April 16, 1968, an indictment was returned charging importation of cocaine earlier that month. Three days later retained counsel entered his appearance; on May 3, 1968, appellant pleaded not guilty and was released on bond.

The second indictment, returned on June 27, 1968, charged importation of heroin on May 29, 1968. Again represented by the same counsel, in due course appellant entered a plea of not guilty. Motions attacking both indictments were duly filed and denied; after several continuances, the two cases were set for trial on February 3, 1969. On that date counsel advised the court of appellant's desire to change his plea, and there ensued the colloquy which is now relied upon to support his collateral attack.

Both indictments charged a violation of 21 U.S.C. § 174.[9] Under that statute a first offense is punishable by imprisonment of not less than five nor more than 20 years, and, in addition, a fine of not more than $20,000.00. For "a second or subsequent offense" the period of imprisonment is not less than ten years nor more than 40 years. Counsel for both parties explained to the court that they did not know whether or not the simultaneous pleas of guilty to two separate indictments would subject appellant to the more severe penalties for a second offense.[10] During this colloquy counsel for appellant made the following comment to the court:

"Your Honor has to advise him of the minimum and maximum penalties. But if your Honor's sentence is within the minimum and not exceeding any maximum, I think that that—the defendant then would be advised, and in accordance with the law.

"I understand the Court's problem. Mr. LeCesne and I had a discussion about it. So long as the Court does not exceed, let us say, the allowable maximum for any one, the admonishment would, in my respectful opinion, be a proper admonishment, your Honor."

Thereafter, the court engaged in direct discussion with appellant to make sure that he understood the charges, that he was in fact guilty, and that he understood that he was waiving his right to be tried by a jury. The court then stated:

"I wish to advise you that on your plea of guilty to Count II of each of these two indictments, that I could sentence you to the penitentiary to serve a term not exceeding forty years, and in addition thereto impose a fine not exceeding $20,000 on each of the two Counts.

"Now, being so advised by the Court as to the consequences of your plea of guilty, do you still persist in pleading guilty to Count II of each of these two indictments?

"Defendant Smith: Yes, sir."

The court then asked whether any promises of any kind had been made to appellant in return for his plea, and he personally responded: "No, Your Honor, none at all." When asked if he was pleading guilty of his own free will and accord, he again responded: "Yes, Your Honor." The court then accepted the plea.

Appellant was given an opportunity to speak in mitigation, as was his counsel.

States, 410 F.2d 689 (1st Cir. 1969) the court made the incorrect assumption that the defendant would lose his right to statutory good time as well as parole privileges (see p. 692); in Berry v. United States, 412 F.2d 189 (3rd Cir. 1969), the court made the same incorrect assumption (see p. 192).

9. There was an additional count in each indictment which was dismissed on the government's motion.

10. Cf. Fong Haw Tan v. Phelan, 333 U.S. 6, 8–9, 68 S.Ct. 374, 92 L.Ed. 433.

Counsel's statement included the following comment:

"He has presently an almost prohibitive sentence that he is serving with the State of Illinois, of a minimum of 20 years and a maximum of 40 years. At some point we hope that he will be rehabilitated in the state institution.

"I earnestly and prayerfully urge the Court to impose such sentence as the Court makes concurrent with a state sentence. He will not be a young man when he comes out of the state penitentiary. The minimum time for which he is eligible for parole goes well into 13 or 14 years, your Honor, before he is eligible for parole consideration on a 20 year minimum sentence.

"I ask the Court to consider that presently he is serving a sentence as high as any I have seen for possession of narcotics in the State of Illinois."

Counsel then asked the court to impose concurrent sentences and to consider probation after appellant's release as a deterrent to further narcotics violations. In this discussion counsel referred to the court's availability "in 13 or 14 years" in order to be able to supervise such probation.

Having reviewed appellant's prior record,[11] the court imposed sentences of 19 years on each of the two indictments, the two sentences to run concurrently with each other and also concurrently with the sentence previously imposed by the Circuit Court of Cook County.

Because appellant was convicted of violations of 21 U.S.C. § 174, the execution of his sentence could not be suspended, probation could not be granted, and he was not eligible for parole.[12] The court did not discuss any of these consequences of conviction with appellant before his guilty plea was accepted. Nor did the court advise him of the good time allowance he might obtain for observance of prison rules,[13] or for performing duties of outstanding importance in connection with institutional operations.[14] As a result of such allowances, appellant's actual discharge under concurrent sentences of 19 years might occur in approximately 9½ years. If he had received the maximum sentence, and if he were eligible for parole, his earliest discharge would be after approximately 13⅓ years.[15] On the sentence actually imposed, if he were eligible for parole, that discharge might occur in approximately 6⅓ years.

After the imposition of sentence, appellant filed no motion to withdraw his guilty plea pursuant to Rule 32(d); nor did he file a direct appeal to this court asserting error in the acceptance of his plea. Instead, after the time for direct appellate review had expired, he filed a petition under 28 U.S.C. § 2255 contend-

---

11. On a charge of armed robbery in 1950 he was sentenced to 1 to 2 years in the Joliet penitentiary; in 1955 on a charge of selling narcotics he was sentenced to 2 to 4 years in the state penitentiary; a 1961 conviction of robbery was reversed and, therefore, not considered by the trial court; and he was then in custody of the State of Illinois serving a term of 20 to 40 years for unlawful possession of narcotics.

12. 26 U.S.C. § 7237(d) provides:
"Upon conviction—
"(1) of any offense the penalty for which is provided in subsection (b) of this section, subsection (c), (h), or (i) of section 2 of the Narcotic Drugs Import and Export Act, as amended, or such Act of July 11, 1941, as amended, or

"(2) of any offense the penalty for which is provided in subsection (a) of this section, if it is the offender's second or subsequent offense,
the imposition of execution of sentence shall not be suspended, probation shall not be granted and in the case of a violation of a law relating to narcotic drugs, section 4202 of title 18, United States Code, and the Act of July 15, 1932 (47 Stat. 696; D.C.Code 24–201 and following), as amended, shall not apply."
Subsection (c) of § 2 of the Narcotic Drugs Import and Export Act, as amended, is now 21 U.S.C. § 174.

13. 18 U.S.C. § 4161.

14. 18 U.S.C. § 4162.

15. See 18 U.S.C. § 4202.

ing that his conviction should be avoided collaterally. In his petition he alleged that he was not advised by the court that he was not eligible for parole and that he "was without such understanding." [16]

Even if we accept this allegation at face value,[17] it is difficult to find anything unfair about the acceptance of appellant's plea. He was represented by competent counsel. It is evident from the colloquy in open court that the period of actual incarceration which was anticipated was approximately 13 or 14 years. It is of little importance whether appellant assumed that imprisonment for that period of time would result from: (a) one-third of a sentence of 40 years (on the assumption that he would be eligible for parole); (b) two-thirds of a sentence of 19 years (on the assumption that he would receive normal statutory good time, but be ineligible for parole); (c) one-half of a sentence of 26 or 27 years (on the assumption that he would receive extraordinary as well as normal statutory good time allowance); or (d) 100 percent of a sentence of 13 years (on the assumption that any foreshortening of his sentence was a matter of grace that might be withdrawn). Whatever assumption appellant may have made, his actual confinement will not exceed what he was led to expect by the proceedings in open court, and will be sub-

stantially shorter than the maximum penalty which the judge told him could be imposed.

Tested by standards of fairness, I therefore, find no defect in the proceedings which led to the acceptance of appellant's plea of guilty.

## IV.

The rule of this case requires the trial court to tell an accused that instead of serving a minimum of one-third of an unknown sentence, he will have to serve at least one-half or two-thirds of that unknown period. Unless the accused is entitled to know his actual sentence before he pleads, the reason for the rule is not apparent.

The rule treats the expectation of parole as though it were a matter of right rather than privilege. In my opinion, it is not essential that the defendant be advised of parole ineligibility to avoid manifest injustice; moreover, the responsibility for giving this kind of advice to a defendant represented by competent counsel should not be imposed on busy trial judges.

Knowledge of parole ineligibility is less important to the accused than knowledge of the actual sentence he is to receive. Clearly he has no right to know his sentence before his guilty plea

---

16. His complete allegations were:
 "1. That he entered his plea of guilty to Count 2 of the indictment charging him with possession of narcotics illegally imported into the United States in violation of 21 U.S.C. 174 without having been fully advised of the nature or consequences of his plea of guilty.
 "2. Although he was advised by the court that he might receive a maximum sentence of 20 years, he was not advised by the court that he was not eligible for parole, or that 26 U.S.C. 7237(d) specifically forbids parole for sentences for violations of the law to which defendant pled guilty.
 "3. As ineligibility for parole is one of the consequences of the plea for which Rule 11 of FRCrP requires direct judicial inquiry of the defendant to ascertain his understanding before ac-

cepting the plea, the defendant was without such understanding."

17. Notwithstanding the improbability of the allegation that appellant did not understand that he would be ineligible for parole (since he was represented by experienced retained counsel), we must assume that appellant would so testify under oath and that his attorney would corroborate his testimony; it would be' difficult if not impossible for the government to rebut that evidence. It would then follow that appellant could now plead not guilty to the original charges and require the government to reassemble, if still available, the evidence of guilt which presumably was at hand when the criminal proceedings respectively commenced in April and June of 1968.

may be accepted;[18] advice that an unknown sentence will be divided by two-thirds or one-half instead of by one-third to determine the period of actual imprisonment cannot be of greater importance than advice about the actual sentence itself. The rule of this case is, therefore, inconsistent with the well settled practice of advising the defendant of the maximum possible sentence [19] while denying him any right to know the actual sentence in advance of the plea. A defendant's disappointment upon learning of parole ineligibility is not unlike the shock of an unanticipated prison sentence for a defendant expecting a fine or, at worst, a period of probation. Such disappointment is not "manifest injustice." [20]

Nor, in my opinion, would manifest injustice result from a modification of the standards for determining parole eligibility after conviction. Congress may decide to experiment with more liberal parole standards or it may deem it appropriate to curtail parole privileges. The advice which is required by the rule of this case may, therefore, become obsolete before it has any bearing on a defendant's period of actual confinement.

The withdrawal of parole eligibility for both narcotic and marihuana offenders was part of the Narcotics Control Act of 1956, 70 Stat. 567, 569; 26 U.S.C. § 7237(d). Ten years later, however, as a part of the Addict Rehabilitation Act of 1966, Congress removed the bar to parole for marihuana offenders. 80 Stat. 1449. Thus, marihuana offenders who entered guilty pleas during the decade between 1956 and 1966 were ineligible for parole at the time of their convictions, but after 1966 their parole eligibility was restored. If the acceptance of a guilty plea from a marihuana offender without discussing ineligibility for parole was unconstitutional during the pre-1966 decade, the legislative change adopted in 1966 could not remove the constitutional defect. On the other hand, it should not offend our sense of decency and fair play to deny relief to a prisoner who is now eligible for parole on the ground that the trial judge failed to advise him that he would *not* be eligible.

With respect to narcotic offenders, the bar to parole eligibility enacted in 1956 has recently been removed by the adoption of the Comprehensive Drug Abuse Prevention and Control Act of 1970, Public Law 91–513, 84 Stat. 1236, 1292 (§ 1101(b) (4) (A)). As I read the statute, although appellant was ineligible for parole when his guilty plea was accepted, his eligibility has now been restored.[21] Even if my reading of the statute is incorrect, it is perfectly

---

18. The wording of Rule 32(d) expressly indicates that only in exceptional cases should a court entertain a motion to withdraw a guilty plea after the defendant finds out what his actual sentence will be. F.R.Crim.P. 32(d). See F.R.Crim.P. 32(c); American Bar Association Project on Minimum Standards for Criminal Justice: Standards Relating to Pleas of Guilty, § 3.3(b) and accompanying commentary (approved draft, 1968).

19. "It is the responsibility of the trial judge to inform the defendant as to the possible consequences of his plea of guilty—to-wit, the maximum range of permissible punishment." Seminars for Newly Appointed United States District Judges Conducted by the Committee on Pretrial Procedure, Judicial Conference of the United States, p. 228. See, also, for example, Ill.Rev.Stat., Ch. 38, § 113–4(c) (1969). The Supreme Court has referred to this statutory provision as an example of an effective waiver of the right to plead not guilty. See Boykin v. Alabama, 395 U.S. 238, 244, note 6, 89 S.Ct. 1709, 23 L.Ed.2d 274.

20. See cases cited in footnote 2 *supra*.

21. Section 1103(a) provides:

"Prosecutions for any violation of law occurring prior to the effective date of section 1101 shall not be affected by the repeals or amendments made by such section or section 1102, or abated by reason thereof."

Presumably the purpose of this provision was to avoid the common law rule that would have precluded a future prosecution of any offenses occurring prior to

clear that Congress may restore parole eligibility for appellant as it did for marihuana offenders. The fact that parole eligibility is a matter of privilege, subject to change by the legislature, makes it inappropriate to elevate this subject to the same constitutional plane as a defendant's right to a fair trial.

The most effective safeguard against manifest injustice is competent counsel. See Von Moltke v. Gillies, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309; Smith v. O'Grady, 312 U.S. 329, 334, 61 S.Ct. 572, 85 L.Ed. 859. The direct colloquy between the court and the accused required by the plain language of Rule 11 enables the court to make the fundamental determination that his plea is voluntary and trustworthy. But factors such as parole ineligibility, which relate to the wisdom of the plea, are best appraised by counsel in the context of privileged communications between lawyer and client. Direct colloquy about such matters between the court and a defendant represented by an experienced lawyer is relatively meaningless ritual.[22]

I recognize that the narrow holding of this case does not necessitate any major change in the arraignment procedures already required by the plain language of Rule 11. However, I fear that the premises on which the decision rests will significantly increase the required colloquy between the accused and the court, and thereby multiply the possibilities of error, occupy valuable court time, and rarely be productive except when the accused is not represented by counsel. Thus, I am concerned that the rule of this case tends to place a greater premium on a required ritual than on the fair exercise of judgment by experienced trial judges and trial lawyers. In my opinion, both due process in the constitutional sense and the practical administration of the day to day business of the courts will be better served by placing greater confidence in the trial bench and the bar.

I respectfully dissent.

---

the effective date of the Act. See United States v. Reisinger, 128 U.S. 398, 401, 9 S.Ct. 99, 32 L.Ed. 480. In my opinion, preservation of the government's right to prosecute prior offenses should not be construed as a bar to the restoration of parole eligibility resulting from repeal of §§ 7237 and 7238 of the Internal Revenue Code of 1954. See § 1101(b) (4) (A).

22. Information contained in the presentence report may be just as significant as parole ineligibility, but may not be considered by the court until after the plea has been accepted. F.R.Crim.P. 32(c); see Gregg v. United States, 394 U.S. 489, 491–492, 89 S.Ct. 1134, 22 L.Ed.2d 442.