Frank E. BACHNER,
Petitioner-Appellant,

v.

UNITED STATES of America, Respondent-Appellee (two cases).

UNITED STATES of America,
Plaintiff-Appellee,

v.

Frank E. BACHNER,
Defendant-Appellant.

Nos. 74–1210, 74–1651 and 74–1732.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 27, 1975.

Decided June 5, 1975.

Rehearing and Rehearing En Banc
Denied Aug. 12, 1975.

Edward Spitz, Chicago, Ill., Frank E. Bachner, Santo J. Volpe, Chicago, Ill., for petitioner-appellant.

James R. Thompson, U. S. Atty., Gary L. Starkman and Jeremy D. Margolis, Asst. U. S. Attys., Chicago, Ill. (Frederick H. Branding, Asst. U. S. Atty., Chicago, Ill., on the brief), for respondent-appellee.

Before HASTINGS, Senior Circuit Judge, and STEVENS and TONE, Circuit Judges.

TONE, Circuit Judge.

These appeals challenging two guilty pleas and sentences thereon arise, like many others,[1] from omissions by trial judges to advise a defendant at a hearing on a plea of guilty of special provi-

---

1. *E.g.*, Gates v. United States, 515 F.2d 73 (7th Cir. 1975); United States v. Brown, 499 F.2d 829, 835 (7th Cir. 1974), cert. denied, 419 U.S. 1047, 95 S.Ct. 619, 42 L.Ed.2d 640 (1974).

sions of the federal narcotics laws relating to sentencing, the old law's parole ineligibility provision in one case and the new law's requirement of a mandatory parole term in the other. In each case the District Court held the plea valid under all the circumstances, notwithstanding the omission. We affirm these judgments.

Before May 1, 1971, federal narcotics offenders were subject to mandatory minimum sentences and were ineligible, under former 26 U.S.C. § 7237(d), for probation or parole. Effective that date, the Comprehensive Drug Abuse Prevention and Control Act of 1970, 84 Stat. 1236, replaced the old law and repealed section 7237(d). Under the new act there was no mandatory minimum period of imprisonment and no prohibition against probation or parole. The new act did, however, require that a sentence provide for a minimum special parole term of at least three years. 21 U.S.C. § 841. One of the two convictions Bachner challenges on this appeal was for an offense under the old law, and the other was for an offense under the new law.

## I.

The decisions on failure to advise of parole eligibility as a ground for relief under 28 U.S.C. § 2255 and the effect of Davis v. United States, 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974) were

reviewed by Judge Hastings in his opinion for this court in Gates v. United States, 515 F.2d 73 (7th Cir. 1975). As he pointed out, until the Supreme Court decided Davis the scope of review under section 2255 was uncertain. There was no doubt that relief could be granted for jurisdictional and constitutional errors, but, as the opinion of Mr. Justice Stewart for the majority and the dissenting opinion of Mr. Justice Rehnquist in Davis illustrate, there was disagreement about whether the remedy reached errors of law only and if so what kinds. Davis held that a nonconstitutional error of law could be raised under section 2255, but only if it is "a fundamental defect which inherently results in a complete miscarriage of justice"[2] and "present[s] exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent."[3] 417 U.S. at 346, 94 S.Ct. at 2305.

Before Davis, a majority of the circuits, including ours (United States v. Smith, 440 F.2d 521 (7th Cir. 1971)), granted section 2255 relief to petitioners who were not informed of their ineligibility for parole when they pleaded guilty. Gates v. United States, supra, 515 F.2d at 79, n. 7. These cases, while viewing the error as affecting the defendant's understanding of the consequences of the plea and hence voluntariness, generally relied on Rule 11, as pointed out in Gates, and did not reach

**2.** This phrase originally appeared in Hill v. United States, 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962), in which the Court denied collateral relief under section 2255 for a failure to afford the defendant his right of allocution under Rule 32(a), Fed.R.Crim.P., because the standard, of which the quoted phrase is a part had not been met. The complete context of the phrase in Hill is as follows:

"The failure of a trial court to ask a defendant represented by an attorney whether he has anything to say before sentence is imposed is not of itself an error of the character or magnitude cognizable under a writ of habeas corpus. It is an error which is neither jurisdictional nor constitutional. It is not a fundamental defect which inherently

results in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demands of fair procedure. It does not present 'exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent.' Bowen v. Johnston, 306 U.S. 19, 27, 59 S.Ct. 442, 446, 83 L.Ed. 455." (Other cases also cited.)

**3.** This language originally appeared in Bowen v. Johnston, 306 U.S. 19, 27, 59 S.Ct. 442, 83 L.Ed. 455 (1939), was quoted in Hill with attribution (see n. 2, supra), and when quoted in Davis was attributed to Hill with the notation "internal quotation marks omitted." Bowen was an opinion by Chief Justice Hughes holding habeas corpus available to test the jurisdiction of the court in which the petitioner was convicted.

the constitutional question.[4] This rule has been extended by two courts to failure to advise of a mandatory special parole term (United States v. Richardson, 483 F.2d 516 (8th Cir. 1973); Roberts v. United States, 491 F.2d 1236 (3rd Cir. 1974)), and by one to advice of a greater maximum sentence than the statute actually provides (Kelsey v. United States, 484 F.2d 1198 (3rd Cir. 1973)).[5] The Fifth Circuit, however, held it unnecessary to advise of parole ineligibility (Trujillo v. United States, 377 F.2d 266 (5th Cir. 1967), cert. denied, 389 U.S. 899, 88 S.Ct. 224, 19 L.Ed.2d 221 (1967)), and in cases in which the defendant was misinformed as to the maximum penalty refused to apply an automatic rule and held that a case-by-case analysis should be made to determine whether the defendant would have entered a different plea if the actual penalty was known. United States v. Woodall, 438 F.2d 1317, 1329 (5th Cir. 1971) (in banc), cert. denied, 403 U.S. 933, 91 S.Ct. 2262, 29 L.Ed.2d 712 (1971); see United States v. Blair, 470 F.2d 331, 340 n. 20 (5th Cir. 1972), cert. denied, 411 U.S. 908, 93 S.Ct. 1536, 36 L.Ed.2d 197 (1973). The latter rule was followed by the District Court in this case.

In *Gates* the court noted that the decisions of the various Courts of Appeals granting relief under section 2255 for failure to advise of parole ineligibility were decided before *Davis* and, after explaining the *Davis* test, applied that test to the case before it. Thus the court did not merely hold, on the authority of *Smith* (*supra,* 440 F.2d 521), that failure to advise of parole ineligibility without more automatically entitled the petitioners to relief. Instead it examined the circumstances surrounding the plea and sentence, noting that the petitioners not only had been insufficiently advised before pleading but had been told at the

time they were sentenced that they would be eligible for parole, and concluded as follows:

> "We hold that a § 2255 petitioner is entitled to relief where a court not only fails to inform him prior to his plea of his ineligibility for parole, but also incorrectly informs him at the time of sentencing that he will be eligible. These compound errors present 'exceptional circumstances where the need for the remedy afforded by the writ of *habeas corpus* is apparent.' Davis v. United States, *supra,* 417 U.S. at 436, 94 S.Ct. at 2305." *Gates, supra,* 515 F.2d at 80

The *Gates* opinion also maintained the principle, enunciated in *Smith* (*supra,* 440 F.2d at 526–527), that the quality and magnitude of the error are to be assessed as of the time of the plea and sentence, and not in the light of later events, thus rejecting the government's argument that the petitioners were not harmed by the inaccurate advice because they were sentenced to lesser penalties than the maximum of which the judge advised them. *Gates, supra,* 515 F.2d at 80.

■ *Gates* accordingly demonstrates that the correct application of the *Davis* standard to complaints relating to the defendant's understanding of the consequences of his plea requires an examination of the circumstances at the time of the plea and also at the sentencing hearing, when, as stated in United States v. Brown, 499 F.2d 829, 835 (7th Cir. 1974), cert. denied, 419 U.S. 1047, 95 S.Ct. 619, 42 L.Ed.2d 640 (1974), a motion to withdraw the plea could still have been made. From this examination the court must determine whether the error was of sufficient magnitude to amount to "a fundamental defect which inherently results in a complete miscarriage of jus-

---

**4.** As noted in *Gates,* however (515 F.2d at 79 n. 9), the language of some of these cases in other circuits "might be read to suggest that the holdings were, in part, constitutionally grounded."

**5.** This circuit disagrees on both these points. We reach an opposite result below as to the mandatory special parole term and did so in Schofield v. United States, 441 F.2d 1219, 1221 (7th Cir. 1971), as to the maximum sentence error.

tice" and "present[s] exceptional circumstances where the need for the remedy afforded by the writ of *habeas corpus* is apparent." *Davis, supra*, 417 U.S. at 346, 94 S.Ct. at 2305. If we determine that it was not, we may then prove our answer by looking at what happened afterward to be sure the defendant did not suffer any prejudice.[6]

## II.

Frank Bachner, is the appellant in each of the three appeals before us. In Number 74–1210 he appeals from a judgment denying relief under 28 U.S.C. § 2255 from a conviction upon a plea of guilty to a three-count indictment charging transportation of a quantity of marijuana in violation of former 21 U.S.C. § 176a. Sentences for violation of that statute were subject to former 26 U.S.C. § 7237(d), which prohibited probation or parole for the offender. Bachner entered his plea of guilty on December 3, 1971 and was sentenced on January 4, 1972 to a ten-year term on each count, the terms to run concurrently. He was also fined $10,000 and assessed the costs of prosecution. He appealed, arguing that he should have been sentenced under the new act. This court affirmed by unpublished order on March 14, 1973.

Bachner contends in this proceeding that at the sentencing hearing the judge failed both to advise him of the nature of the charges and to determine that there was a factual basis for the plea, and also failed to advise him of the consequences of his plea by omitting to mention ineligibility for probation or parole and liability for costs, all in violation of Rule 11 and his constitutional rights.

■ The contentions as to failure to advise of the nature of the charges and

to determine that there was a factual basis for the plea are wholly without merit. At the plea hearing the judge summarized the charges contained in the indictment and asked Bachner whether he understood those charges. Bachner answered that he did. The judge then asked, "Did you do the things that you are charged with doing in these three counts?" Bachner answered, "Yes, your Honor." At the sentencing hearing Bachner volunteered, "I am guilty of this. I realize what the danger was, to be very honest." While the explanation of the charges and the establishment of the factual basis for the plea might have been more detailed, the record is adequate, especially in view of the presence of competent retained counsel, to establish that Bachner comprehended the nature of the charges and made an understanding acknowledgment of their truth. *Cf.* Arias v. United States, 484 F.2d 577, 579–580 (7th Cir. 1973), cert. denied, 418 U.S. 905, 94 S.Ct. 3195, 41 L.Ed.2d 1153 (1974).

The contentions relating to adequacy of the advice about the consequences of the plea require more discussion. At the plea hearing the judge said he did not have the statute before him on the bench and asked the prosecutor to state the penalties called for by the statute. After the prosecutor had responded, the judge summarized the penalties as follows:

"Mr. Bachner, I must tell you that if your motion is allowed here and you come to be convicted, the court has the power to impose a maximum sentence—maximum means the most that the court could impose—of twenty years, a maximum fine of $10,000, or both, but the court would be obligated

---

**6.** The proposed amendment of Rule 11 now before Congress (H.R. 6799, 94 Cong., 1st Sess., § 3(6) (May 7, 1975)) would eliminate the present requirement that the court inform the defendant of the consequences of his plea. The amendment

"requires instead that the court inform the defendant of and determine that he understands 'the mandatory minimum penalty provided by law, if any, and the maximum

possible penalty provided by law for the offense to which the plea is offered.'" Proposed Amendments to the Federal Rules of Criminal Procedure, H.R.Doc. 93–292, 93d Cong., 2d Sess. 29 (1974).

Under the amended rule, the judge would not be required to inform the defendant of his ineligibility for parole or any matters other than the mandatory minimum penalty, if there is one, and the maximum possible penalty. (*Id.*)

in the event of your conviction to impose a minimum mandatory sentence of five years on each of these counts. Putting it very bruskly and succinctly and clearly, the court would be obligated to impose a minimum sentence in the aggregate against you of fifteen years. It could impose a maximum sentence of sixty years in the aggregate on all three counts. It could impose a maximum fine of $10,000 on each count which would mean $30,000 in the aggregate or the maximum punishment could be imposed both as to prison terms and fines. You understand that?

"Defendant Frank Bachner: Yes, I do, your Honor."

The judge did not state that Bachner would be ineligible for parole. He did, however, before the hearing was concluded, say that Bachner would be ineligible for probation, although Bachner's attorney argued to the contrary and urged that the defendant could be sentenced under the new act and probation could be granted under a decision of the Ninth Circuit, which he did not further identify.[7]

At the hearing on sentencing, the court again asked the prosecutor "the minimum-maximum sentence," and the prosecutor answered as follows:

"Your Honor, the sentence is a minimum of five years and a maximum of twenty years and a fine of, I believe, $20,000.[8]

"Additionally, your Honor, I neglected to mention this is an offense which allows by statute for no probation and no parole."

Bachner's counsel then said he didn't think that was correct, that he thought the no-parole provision had been repealed four or five years earlier, and the court said that would be a matter for the parole board to consider. Counsel for Bachner was of course wrong on this

point, and the prosecutor was right. The court then imposed sentence.

While the reason assigned by Bachner's attorney for his belief that Bachner was eligible for parole was erroneous, and the prosecutor correctly described the statutory penalties, the eligibility of prisoners in Bachner's position was indeed uncertain (compare United States v. McGarr, 461 F.2d 1 (7th Cir. 1972), with Bradley v. United States, 410 U.S. 605, 611, 93 S.Ct. 1151, 35 L.Ed.2d 528 n. 6 (1973)) and remained so until the Supreme Court's decision in Warden v. Marrero, 417 U.S. 653, 94 S.Ct. 2532, 41 L.Ed.2d 383 (1974). In that case the Court held that prisoners sentenced for violations occurring before the old act was repealed were ineligible for parole. Congress, by an amendment to the Controlled Substances Act, effective October 26, 1974, made those prisoners eligible for parole, 88 Stat. 1455. Judge Hastings related this history in more detail in Gates (supra, 515 F.2d at 77–78), and concluded that the effect of the 1974 amendment was not to change the meaning of the applicable statutes as interpreted in Warden v. Marrero but to create eligibility for parole under 18 U.S.C. § 4202 commencing October 26, 1974.

■ Applying the test stated in Part I, above, we conclude that Bachner is not entitled to relief. To begin with, what was initially his principal contention, viz., that he was not advised of his ineligibility for probation, is without foundation in the record. The sentencing judge expressed his belief that Bachner was ineligible for probation, from which it was plain that in any event probation would not be given. Bachner was unequivocally advised of probation ineligibility at the sentencing hearing and made no complaint about not receiving probation then or in his first appeal.

■ Parole ineligibility was not expressly mentioned at the plea hearing,

---

**7.** The decision referred to was presumably United States v. Stephens, 449 F.2d 103 (9th Cir. 1971).

**8.** The statement at the plea hearing that the maximum fine provided by the statute was $10,000 was thus corrected.

but the judge did emphasize the minimum mandatory sentences;[9] and at the sentencing hearing Bachner was expressly advised, through the judge's calling on the prosecutor to state the statutory penalties, of the no-parole, no-probation provisions of the statute. It is true that Bachner's retained counsel questioned the accuracy of the advice given, and that as a result the discussion ended on an uncertain note. But at worst, Bachner knew that his ineligibility for parole was uncertain. He was not misled. At the time of sentencing uncertainty prevailed in the minds of judges and lawyers as to whether the 1970 Act, which was already in effect, had made the no-parole and no-probation restrictions of the old act inapplicable to prisoners being sentenced for violations of that act, an uncertainty that was not resolved until 1974, when the Supreme Court decided *Marrero* and Congress reacted with the ameliorative 1974 amendment. All that could accurately have been stated to Bachner on the subject of parole at the time of plea and sentencing was that it was uncertain whether he would be eligible for parole, and that he certainly understood. As it turned out, Bachner, would have been correct if he had understood that he would be eligible for parole at the normal time provided in 18 U.S.C. § 4202, for, allowing for all possible good time, he had not reached the one-third point in his sentence before the amendment of October 26, 1974 made him eligible for parole. Under these circumstances, it can hardly be said that Bachner's section 2255 petition shows "a fundamental defect which inherently results in a complete miscarriage of justice" and presented "exceptional circumstances where the need for the remedy afforded by the writ of *habeas corpus* is apparent." Davis v. United States, *supra*, 417 U.S. at 346, 94 S.Ct. at 2305.

■ Bachner also contends that Rule 11 was violated because he was not advised that he might be assessed the costs of prosecution under 28 U.S.C. § 1918(b). That omission, even assuming that it was error, cannot be the basis for relief under section 2255. Advice as to liability for costs of prosecution is customarily not given by district judges in receiving pleas of guilty,[10] perhaps because, when the defendant pleads guilty, the costs involved are nominal and are normally not assessed in any event.

■ Assuming, however, without deciding, that there was a technical violation of Rule 11, it is not conceivable that Bachner's determination to plead guilty to a serious narcotics violation carrying heavy penalties, and to persist in that plea after having entered a guilty plea to another serious narcotics violation in a case before another judge, would have been affected by the knowledge that he would be liable for the costs of prosecution, which in view of the guilty plea were surely nominal. The triviality of the costs is made more apparent by the fact that the maximum fine was $60,000, as he was advised, and he was actually fined $10,000. Finally, Bachner could have raised this point immediately after sentencing or on his direct appeal, when the omission could have been corrected by remitting the costs. He cannot set aside his plea on this ground in a section 2255 proceeding.

---

**9.** The court, in the passage quoted earlier in the text, stated that "the court would be obligated to impose a minimum sentence in the aggregate against you of fifteen years," which, literally read, did not allow for the possibility of concurrent sentences. To the extent that this conveyed an inaccurate impression of the minimum sentence possible, it would have served to warn Bachner that an extended period of custody was inevitable whether or not he was eligible for parole. We have held that advising a defendant that the maximum possible sentence is greater than it is in fact does not make the plea involuntary or entitle the defendant to have it vacated. Schofield v. United States, *supra,* note 5, 441 F.2d at 1221.

**10.** Such advice is not referred to in the Bench Book for United States District Court Judges prepared under auspices of the Federal Judicial Center.

### III.

In Numbers 74–1651 and 74–1732, Bachner challenges another judgment of conviction entered on a plea of guilty before another judge, this time contending he was not advised of the requirement in the new narcotics act of a mandatory special parole term. This plea was entered shortly before the one just discussed, and the sentences were imposed the same day. Bachner attacks this judgment by alternate routes, one an appeal from an order resentencing him and the other an appeal from the denial of his petition under 28 U.S.C. § 2255 challenging the original judgment of guilty and sentence.

Bachner pleaded guilty on November 21, 1971 to a one-count indictment charging distribution of cocaine in violation of section 401(a)(1) of the Comprehensive Drug Abuse Prevention and Control Act of 1970, effective May 1, 1971, 84 Stat. 1236, 21 U.S.C. § 841(a)(1). Section 401(b)(1)(A) requires that a sentence imposing a term of imprisonment "shall, in the absence of . . . a prior [federal narcotics] conviction, impose a special parole term of at least 3 years in addition to such term of imprisonment." At the plea hearing the court did not advise Bachner of this mandatory three-year special parole term.

On January 4, 1972, the court sentenced him to a term of imprisonment of ten years to run concurrently with the other ten-year sentence imposed earlier that day. The sentencing order did not include the three-year parole term required by the statute.

Bachner commenced serving his sentence and did not seek to have his plea or the sentence vacated until 1974, when he filed a petition under 28 U.S.C. §§ 2243 and 2255 based upon the court's failure to mention the mandatory parole term at the time of his plea and the omission of the special parole term from the sentence itself. In ruling on the petition, the District Court applied the standard stated in United States v. Blair, *supra*, 470 F.2d at 340 n. 20, which, as paraphrased by the District Court, calls for a determination, "based upon all of the attendant circumstances," of whether the petitioner would "have entered a different plea if the actual penalty was known." Bachner v. United States, 380 F.Supp. 193, 194 (N.D.Ill.1974). The court concluded that "even if equipped with the knowledge of the special parole term," Bachner "would not have pled any differently." (*Id.* at 196.) In so holding the court rejected the "automatic rule which compels the vacation of a plea whenever the maximum sentence is not disclosed by the court." (*Id.* at 194.) While refusing to vacate the guilty plea, the court held that the sentence was technically incorrect because it omitted to provide for the mandatory parole term and therefore vacated the sentence and ordered Bachner brought before the court for resentencing. (*Id.* at 196.)

Subsequently Bachner appeared before the court and was resentenced to a term of imprisonment of seven years, plus a three-year special parole term, rather than the original ten years of imprisonment, still to run concurrently with the sentence in the other case. Bachner appeals from the court's order resentencing him and from the other ruling on the collateral review petition.

Although Bachner's appeal in No. 74–1651 is technically a direct appeal from the resentencing order, we think it should be judged, insofar as it seeks review of the refusal to vacate the guilty plea, by the same standards as the appeal from the section 2255 petition. Bachner did not choose to appeal directly from the original judgment, but instead challenged the plea collaterally after a lapse of time that would make prosecution more difficult in the event of retrial. His challenge to the plea remains a collateral attack in substance even though the judgment was reopened for resentencing because of the technical defect of the failure to spell out the mandatory parole term in the judgment order. That error did not affect the validity of the plea or the judgment of guilty thereon and could be corrected by resen-

tencing. Thompson v. United States, 495 F.2d 1304 (1st Cir. 1974); Caille v. United States, 487 F.2d 614 (5th Cir. 1973); United States v. Mack, 494 F.2d 1204 (9th Cir. 1974). The only substantive change in the resentencing order was the reduction of Bachner's sentence by three years, which should hardly entitle him to reopen his plea. Accordingly, the standard by which we determine Bachner's right to relief is that applicable under section 2255.

■ Failure to advise a defendant of the mandatory parole term does not inherently result in a complete miscarriage of justice. Unlike ineligibility for parole, which "automatically trebles the *mandatory* period of incarceration which an accused would receive under normal circumstances," United States v. Smith, *supra*, 440 F.2d at 525 (emphasis in original), the mandatory parole term has no effect on that period of incarceration and does not ever become material unless the defendant violates the conditions of his parole. It would be as unrealistic, we think, to assume that he would expect to do so and be influenced by that expectation at the time he is considering whether to plead guilty, as it would be to assume that he would be influenced by other contingencies he is not advised about. For example, if he is released early by reason of earned good time, he will be deemed to be on parole until the end of the term of his sentence and hence will be subject to being reincarcerated if he violates parole conditions. 18 U.S.C. §§ 4161–4164. Good time he has earned while he is a prisoner may be forfeited if he commits an offense or violates a rule of the institution. 18 U.S.C. § 4165. Also, the date the defendant will be eligible for parole will depend on whether the judge leaves it to be governed by 18 U.S.C. § 4202; specifies an eligibility date before the expiration of one-third of the sentence, as permitted by 18 U.S.C. § 4208(a)(1); or specifies that the prisoner shall be eligible at such time as the board of parole may determine, as permitted by 18 U.S.C. § 4208(a)(2). These contingencies are too remote from the considerations that may reasonably be expected to motivate a defendant's plea decision to be of legal significance. We recognize that our conclusion is inconsistent with decisions of the Third and Eighth Circuits, Roberts v. United States, *supra*, 491 F.2d 1236 and United States v. Richardson, *supra*, 483 F.2d 516, but both these cases were decided before *Davis* clarified the standards for granting relief under section 2255.

■ Bachner has not been prejudiced by the court's omission to advise him of the mandatory parole term. He was told that he could receive as much as fifteen years, and he could not have complained if the court had given him that long a sentence. Instead he initially received (concurrent with his other ten-year sentence) a ten-year sentence, to which the statute required the addition of a parole term, and ultimately received a seven-year sentence with the three-year parole term added. The sentence he received was substantially below the maximum he had been told he could receive.

Bachner argues that under the statute he might have received either a sentence of fifteen years imprisonment plus a parole term, or a parole term far in excess of the mandatory minimum of three years, with the result that the total of the term of his sentence and the term of his parole might have far exceeded the fifteen years he was advised was the maximum sentence he could receive. The remote and theoretical possibility that a complete miscarriage of justice might have occurred is not enough to satisfy the *Davis* test, when in fact no injustice has been done.

Affirmed.

STEVENS, Circuit Judge (concurring).

Because the basic problem exemplified by these appeals arises so frequently,[1]

---

1. *See, e.g.,* United States ex rel. Montgomery v. People of the State of Illinois, 473 F.2d 1382 (7th Cir. 1973); Arias v. United States, 484 F.2d 577 (7th Cir. 1973), cert. denied, 418 U.S. 905, 94 S.Ct. 3195, 41 L.Ed.2d 1153.

and because the development of the relevant law has been somewhat tortuous,[2] I believe a few additional comments are appropriate.

First, it is important to note that neither United States v. Smith, 440 F.2d 521 (7th Cir. 1971), nor Gates v. United States, 515 F.2d 73 (7th Cir., 1975),[3] was decided on constitutional grounds. Moreover, for the reasons set forth at some length in my dissenting opinion in *Smith,* I think it is clear that the mere fact that a trial judge accepts a guilty plea without first advising the defendant that he will be ineligible for parole. does not create constitutional error. *See* 440 F.2d at 529–535.

Second, it is important to differentiate between the two types of constitutional attack which may be made upon a judgment entered pursuant to a guilty plea. Such a judgment might be constitutionally defective either (a) because the plea was not made voluntarily, or (b) because the arraignment procedures, taken as a whole, were fundamentally unfair. *See Smith, supra,* at 529.

On the issue of voluntariness, it is, of course, inappropriate to take into account subsequent events, such as the actual sentence imposed; necessarily, the plea is either voluntary or involuntary at the time the defendant makes his choice. On the other hand, if the fairness of the entire procedure is at issue, in my judgment the inquiry should not be limited so narrowly. On the fairness issue, in addition to reviewing the arraignment itself, I would think it appropriate also to consider what happened at the sentencing hearing—as the court did in *Gates*—as well as what may have happened later— as the court refused to do in *Gates.* In sum, facts subsequent to the acceptance of the plea are irrelevant on a voluntariness issue, but, I believe, relevant on a fundamental fairness question.

Third, it is important to note that this circuit's interpretation of the impact of Davis v. United States, 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109, is not the only permissible reading of that case. We have treated *Gates* as creating a new category of error, somewhat less serious than constitutional error, and somewhat more serious than ordinary reversible error. Defects in this new intermediate category justify a collateral attack even if the petitioner's constitutional rights are not violated.

If I were free to write on a clean slate, I would read *Davis* differently. Unquestionably it recognized a new basis for collateral attack. But the *Davis* standard, as I understand it, is not less stringent than the fairness standard implicit in the Due Process Clause of the Fourteenth Amendment. Rather, I believe *Davis* applies to a different type of issue.

The *Davis* case involved a change in the law applicable to the merits of the defendant's case;[4] it did not involve a procedural error, such as a violation of Rule 11 of the Federal Rules of Criminal Procedure. Even before the Supreme Court decision in *Davis,* I think it was clear that any procedural error sufficiently serious to be characterized as "a fundamental defect which inherently re-

---

2. *See* Gates v. United States, 515 F.2d 73 (7th Cir., 1975), at pages 76–78.

3. The following comment at pages 79–80 of 515 F.2d in *Gates* refers, of course, to the *Smith* holding:
   "Our court, and the other courts of appeals which have held that failure to inform of parole ineligibility is a violation of the Rule 11 requirement that the plea be made with knowledge of its consequences, did not reach the question of whether such failure rendered the acceptance of the plea unconstitutional." (Footnotes omitted).

With respect to the *Gates* holding itself, Judge Hastings pointed out that
   ". . . it is not necessary to reach the question of whether the acceptance of the guilty pleas in the instant cases was unconstitutional since we find here that petitioners are entitled to relief on the nonconstitutional ground that the convictions contain a 'fundamental defect which inherently results in a complete miscarriage of justice.'"

4. *See also* Strauss v. United States, 516 F.2d 980 (7th Cir., 1975).

sults in a complete miscarriage of justice" would have violated the due process clause and therefore created constitutional error justifying a collateral attack pursuant to § 2255. *See* Hill v. United States, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417. The *Davis* case did not, as I read it, establish a new standard for judging collateral attacks. It merely applied the constitutional standard already applicable to procedural due process questions to substantive matters not protected by the Constitution.

Under this reading of *Davis,* our holding that the record discloses no "fundamental defect which inherently results in a complete miscarriage of justice" is, I believe, merely another way of saying that the Due Process Clause was not violated because the proceedings, viewed as a whole, were not fundamentally unfair.

Fourth, I think it is also important to note that the voluntariness issue in a Rule 11 context is not necessarily judged by the same standard as in a constitutional context. The Constitution does require that the record affirmatively disclose the voluntary character of the defendant's waiver of his right to trial and his admission of guilt. *See* Boykin v. Alabama, 395 U.S. 238, 242–243, 89 S.Ct. 1709, 23 L.Ed.2d 274. Certainly, as a constitutional matter, the plea may not be the product of deception or coercion, and sufficient advice must be given to make sure that the defendant understands the nature of the protections he is waiving and the serious character of his admission.[5] But in my opinion it is the rule and not the Constitution that requires the trial judge to give the defendant specific and accurate advice about the sentence which may be imposed after conviction. Although I recognize that a plea of guilty is more conclusive than a confession, it seems illogical to make the constitutional test of the voluntariness of

an admission made in open court significantly more stringent than the test of voluntariness of a confession made in the interrogation room of a police station. Relatively minor errors in the trial judge's advice to the defendant should not render the acceptance of his plea constitutionally impermissible, particularly if he is represented by competent counsel.

In this case I am satisfied that the trial judge's failure to advise the petitioner that he would have to serve a special parole term of at least three years after his release from prison did not make his plea involuntary. If there had been a material difference between the punishment which the judge had the power to impose and the punishment which the judge advised the defendant he could receive, the advice might be sufficiently deceptive to make the plea involuntary. That conclusion would follow regardless of what sentence the judge might impose; for, as I previously suggested the voluntariness of the defendant's choice is unaffected by an event occurring after his choice is made. In this case, I agree that the mandatory parole term, though a matter of importance, is a comparatively minor factor when considered in connection with the judge's advice to the defendant that he might be imprisoned for as long as 15 years. The omission, in my judgment, did not make the advice which was actually given materially misleading; accordingly, the plea was voluntary.

On the fairness issue, I think the advice should be compared with the actual sentence rather than with a correct statement of the sentence that might properly have been imposed. As long as the actual sentence was less than the maximum as described in the judge's advice, I would find no unfairness—and certainly not any unfairness sufficiently grave to qualify as constitutional error.

---

**5.** Of course, the question whether it was wise for the defendant to plead guilty is quite differ-

ent from the question whether the plea was voluntary. *See Smith, supra,* 440 F.2d at 530.