**Garth McRAE, Appellee,**

v.

**UNITED STATES of America, Appellant.**

**No. 76–1206.**

United States Court of Appeals,
Eighth Circuit.

Submitted June 18, 1976.

Decided Aug. 26, 1976.

Frederick B. Polak, U. S. Dept. of Justice, Washington, D.C., for appellant; Robert G. Renner, U. S. Atty., D. Minnesota, Minneapolis, Minn., on brief.

William J. Mauzy, Minneapolis, Minn., for appellee.

Before BRIGHT, ROSS and STEPHENSON, Circuit Judges.

ROSS, Circuit Judge.

This is an appeal by the United States from an order of the district court granting relief to Garth McRae under 28 U.S.C. § 2255. McRae's action is based on the premise that at the time of his plea and sentences he had not been properly advised of the existence of a "special parole term" mandatorily imposed under 21 U.S.C. § 841(b)(1)(A) for drug offenses. The special parole term has been held to be a "consequence of the guilty plea" under Fed. R.Crim.P. 11 about which a defendant must be advised. *United States v. Richardson,* 483 F.2d 516 (8th Cir. 1973). The district court in reliance on the *Richardson* opinion held that McRae's sentences received pursuant to his guilty pleas must be vacated because "the petitioner [McRae] was not advised on the record of the meaning of the special parole term * * *." *McRae v. United States,* (D.Minn. filed Feb. 5, 1976)

slip op. at 4. We reverse the judgment of the district court with directions to reinstate the sentence previously imposed.

McRae pleaded guilty on July 3, 1974, to one count of conspiracy and one count of possession with intent to distribute illegal drugs in violation of 21 U.S.C. §§ 846 and 841(a)(1). Pursuant to a plea bargain, other counts remaining against McRae were dismissed. The transcript of the guilty plea hearing indicates that no mention was made of the special parole term; however, the defendant was questioned thoroughly about the facts underlying the conspiracy and possession and his willingness to plead guilty. He was told several times that under the plea bargain he would face a maximum incarceration period of seven years.

On September 5, 1974, McRae was sentenced on the two counts for a period of three years. The court further stated "[a] special parole term of three years is added to this sentence pursuant to 21 United States Code 841(b)(1)A." The court failed to state whether McRae was being sentenced under one or both counts. One week later on September 12, 1974, the sentence on the conspiracy count was vacated since it did not comply with the plea bargain which was to the effect that McRae was to receive only two years on the conspiracy count. At the September 12 resentencing to correct this error McRae was sentenced to two years on the conspiracy count, three years on the possession count, and the terms were made concurrent. The special parole term was again added.

Almost one year later in August 1975 McRae made the motion to vacate sentence reviewed here. At the district court hearing McRae asserted on direct examination that he had no knowledge of the meaning of "special parole term" prior to a conversation with an acquaintance at Sandstone Prison where he was incarcerated; that he had not discussed the special parole term at any time with his counsel; and that he had not understood the special parole term's meaning at the time he submitted the guilty plea. These assertions, the authority of *Richardson,* and the lack of mention of

special parole on the record of the guilty plea hearing persuaded the district court to vacate the sentences. The court did so on the rationale that *Richardson* imposes a *per se* rule of automatic reversal: "[I]f the record does not reflect the defendant's understanding of the special parole term, the sentence must be vacated." *McRae v. United States,* No. 3–75 Civ. 302 (D.Minn. filed Feb. 5, 1976) slip op. at 4. The district court felt "constrained to follow the *per se* rule adopted in *Richardson,*" even though the "[c]ourt finds it difficult to believe that the petitioner did not understand the meaning of his special parole term." *Id.*

Since our court's decision in *Richardson* in 1973, the Supreme Court has further explored the parameters of § 2255 review. In *Davis v. United States,* 417 U. S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974) the Court determined that certain nonconstitutional *errors of law* should be within § 2255 purview by emphasizing the language and history of the statutory section. *Davis v. United States, supra,* 417 U. S. at 344, 94 S.Ct. 2298, 41 L.Ed.2d 109. While thus redefining the types of error cognizable in habeas corpus, the Court stressed that the magnitude of any claimed error was also a threshold consideration. The Court warned that not "every asserted error of law can be raised on a § 2255 motion." *Davis v. United States, supra,* 417 U.S. at 346, 94 S.Ct. at 2305. Noncompliance with the formal requirements of a rule of criminal procedure would not permit collateral review in the absence of indicated prejudice to the defendant. *Davis v. United States, supra,* 417

U.S. at 346, 95 S.Ct. 2298, *quoting Hill v. United States,* 368 U.S. 424, 429, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962). To test the error's magnitude, the Court suggested that:

> [T]he appropriate inquiry was whether the claimed error of law was "a fundamental defect which inherently results in a complete miscarriage of justice," and whether "[i]t . . . present[s] exceptional circumstances where the need for the remedy afforded by the writ of *habeas corpus* is apparent."

*Davis v. United States, supra,* 417 U. S. at 346, 94 S.Ct. at 2305.[1]

It is in the light of this standard that the Seventh Circuit has recently considered the special parole term issue. *Bachner v. United States,* 517 F.2d 589 (7th Cir. 1975). The appeals court first concluded that the "[f]ailure to advise a defendant of the mandatory parole term does not *inherently* result in a complete miscarriage of justice," id. at 597 (emphasis added), and then examined the facts surrounding Bachner's plea. It concluded that no prejudice had inhered to the individual defendant. *Id.* at 592, 597.

█ Concededly, a Rule 11 error was made in the present case as pointed out by this court's holding in *Richardson;* but the evaluation of that error in post-*Davis* § 2255 proceedings will now require that the error be placed in the context of all surrounding legal events and indicated prejudices.[2]

█ In our opinion this case presents no fundamental defect inherently resulting in a complete miscarriage of justice where the

1. The *Davis* decision relies upon an earlier Supreme Court opinion, *Hill v. United States,* 368 U. S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962). In *Hill* the defendant was not asked by the court if he wished to make a statement in his own behalf before sentencing pursuant to Fed. R.Crim.P. 32(a). The record was clear that he had not been given an express opportunity; the only remaining question was whether a collateral attack on this error would be allowed. *Id.* at 426. The Court there developed the "miscarriage of justice" standard later repeated in *Davis. Id.* at 428.

2. Commenting on this selective process in *Gates v. United States,* 515 F.2d 73, 78–79 (7th

Cir. 1975) the court stated: "Although the Supreme Court's recent opinion in *Davis v. United States, supra,* removes some of this uncertainty by a clearer statement of the standard of review, the contours of that standard are yet to be clarified through a process of application." (Footnote omitted.)

In *Gates* the Seventh Circuit applied the *Davis* standard to another Rule 11 violation, failure to advise of parole ineligibility, and did find that the error warranted relief. Citing the presence of "compound" errors the court concluded that the case presented the requisite "exceptional circumstances." *Gates v. United States, supra,* 515 F.2d at 81.

need for the remedy afforded by the writ of habeas corpus is apparent. Several factors place this case outside the factors present in *Richardson.*

The appellee McRae participated in a plea bargain, making an agreement for a maximum of seven years of incarceration. The transcript of the § 2255 hearing does not reveal an uninformed defendant, but instead indicates that McRae actively participated with his attorney in the plea negotiations and in formulating the bargain. Besides participation in the plea bargaining, it is clearly established on the record, before McRae's admission of his guilt, that he understood he faced a possible seven year incarceration term as a consequence of the plea. In actuality he received only a three year term on one count which ran *concurrently* with a two year term on the second count. Even if the three year special parole term were to materialize, the maximum period of incarceration would be six years, one year less than the maximum he had bargained for. This result, lacking in prejudice to the defendant, was relied on in *Bachner v. United States, supra,* 517 F.2d at 597.

> Bachner has not been prejudiced by the court's omission to advise him of the mandatory parole term. He was told that he could receive as much as fifteen years, and he could not have complained if the court had given him that long a sentence. Instead he initially received (concurrent with his other ten-year sentence) a ten-year sentence, to which the statute required the addition of a parole term, and ultimately received a seven-year sentence with the three-year parole term added. The sentence he received was substantially below the maximum he had been told he could receive.

*Id.*

Moreover, there is evidence that at the time of the plea McRae was not concerned that his future parole violations might have special consequences.[3] At the § 2255 hearing Mr. Jack Winnick, counsel for the defendant at the time of his guilty plea, testified:

> [T]hat as far as the time of the parole was concerned he didn't really care how much time the judge placed him on parole, because he knew that he had learned from this experience and he wasn't going to be involved in illegal activity; therefore, he wouldn't violate parole. That was the thrust of the conversation.

It is clear that prior to the guilty plea the available legal alternatives were explored between counsel and client. According to McRae's § 2255 testimony, the advisability of a plea versus a trial was discussed as well as the facts in the case and the possible penalties McRae could receive.

McRae then made a total of three appearances before the judge. He admitted that he had heard the special parole term pronounced at the second appearance, which was the first sentencing on September 5, 1974. In the one week interval which elapsed between the second and third appearances, McRae met with his attorney. After that first sentencing, McRae's attorney was primarily concerned about the concurrency of the sentences and, according to the attorney's own notes, had checked into this problem as well as the meaning of "special parole term" with Mr. Shapiro, the former U. S. Attorney. Mr. Winnick then testified that he discussed the questions of concurrency and the one year error with the defendant at their meeting. There was, then, ample opportunity during that week for McRae and his counsel to discuss the special parole they both had heard pronounced, though McRae testified that they did not discuss it and his attorney testified that he could not remember. Finally, when asked by the court at the resentencing if

---

**3.** [T]he mandatory parole term has no effect on that period of incarceration and does not ever become material unless the defendant violates the conditions of his parole. It would be [as] unrealistic, we think, to assume that he would expect to do so and be influenced by that expectation at the time he is considering whether to plead guilty  *  *.
*Bachner v. United States, supra,* 517 F.2d at 597.

the prior sentence should be vacated in favor of a new one, Mr. Winnick replied: "Yes, your Honor, I have gone over the proposed sentence with my client and with the clerk."

There is also an important factor which distinguishes this case from *Richardson*. Though *Richardson* was a § 2255 action also, the defendant Richardson had objected to his September 6, 1972, sentencing and the special parole term only 14 days later, on September 20, 1972. The defendant McRae's wait of almost one year before objecting is significantly more prejudicial to his credibility than Richardson's immediate challenge.

 In conclusion, we reiterate that under *Davis* the ultimate question to be determined is this: was there a fundamental defect in the proceedings which inherently resulted in a complete miscarriage of justice and presented exceptional circumstances that justify collateral relief?[4] The court has concluded from its examination of the record in this case there is not such an effect here. Reversed and remanded with directions to deny the petition.

---

4. *See Weisser v. Ciccone,* 532 F.2d 101 (8th Cir. 1976) (Webster, J., Concurring) and *Sapping-* *ton v. United States,* 523 F.2d 858 (8th Cir. 1975) (Webster, J., Concurring).