**Howard HORSLEY, Appellant,**

v.

**UNITED STATES of America.**

**No. 77–2297.**

United States Court of Appeals, Third Circuit.

Submitted under Third Circuit Rule 12(6) May 23, 1978.

Decided Aug. 28, 1978.

A. Leon Higginbotham, Jr., Circuit Judge, dissented and filed opinion.

---

G. William Bills, Jr., Pittsburgh, Pa., for appellant.

Blair A. Griffith, U. S. Atty., David B. Atkins, Jr., Bruce A. Antkowiak, Asst. U. S. Attys., Pittsburgh, Pa., for appellee.

Before ALDISERT, GIBBONS and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

This appeal from the district court's denial of Howard Horsley's motion pursuant to 28 U.S.C. § 2255 presents the question whether the trial judge's failure personally to advise an accused of the nature and elements of the offense with which he was charged and to which he pleaded guilty requires that plea to be vacated. Because the record reveals that the plea colloquy did not satisfy the requirements of Federal Rule of Criminal Procedure 11,[1] resulting in prejudice to the appellant, we reverse the decision of the district court and remand the case with instructions that Horsley be permitted to plead anew.

### I.

In July 1976 ten defendants, including appellant Horsley, were indicted and charged with conspiracy and substantive vi-olations of the federal narcotics law. Horsley was named as a defendant in count one (conspiracy to distribute heroin in violation of 21 U.S.C. § 846) and count five (possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1)). After initially pleading not guilty before a magistrate, appellant changed his plea on November 8, 1976, to one of guilty to the first count. The trial judge questioned the defendant pursuant to Rule 11, and ultimately accepted the plea. Horsley subsequently received the maximum statutory sentence: 15 years imprisonment to be followed by a special parole term of three years, to run consecutively with any sentence being served by appellant at that time.

Acting at first *pro se,* and thereafter through retained counsel, appellant filed a § 2255 motion to vacate the sentence, along with a motion to withdraw the guilty plea. Both motions centered on the allegation that the trial judge failed to advise Horsley of the elements of the offense with which he was charged and that, as a result, the guilty plea was not knowingly and voluntarily entered.

### II.

In accord with the Rule 11 mandate that the court inform defendant of, and determine that he understands, the nature of the charge, the court questioned the appellant as follows:

Q. And you have indicated to [the prosecuting attorney] that you received a copy of the indictment in this case and had an opportunity to go over it with your attorney?

A. Yes, sir.

Q. Do you fully understand the charges against you?

A. Yes, sir.

Q. Do you understand the indictment charges you with conspiracy with respect to heroin, and that is the count you are pleading to?

---

1. Fed.R.Crim.P. 11 provides in pertinent part:
   (c) Advice to Defendant.
   Before accepting a plea of guilty . . . the court must address the defendant personally in open court and inform him of, and determine that he understands, the following:
   (1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law . . . ..

A. Yes, sir.

Q. Have you told Mr. Bogdon all the facts in connection with this charge?

A. I have.

Q. And are you satisfied with Mr. Bogdon as your attorney?

A. Yes.

Appendix at 10B.

Our review of the correctness of this Rule 11 proceeding begins with *McCarthy v. United States,* 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969). The Supreme Court there concluded that "a defendant is entitled to plead anew if a United States district court accepts his guilty plea without fully adhering to the procedure provided for in Rule 11." *Id.* at 463–64, 89 S.Ct. at 1169. The Court specifically stated that the Rule requires a district judge to inquire personally into the defendant's understanding of the charge. *Id.* at 467, 89 S.Ct. 1166.

This court has similarly insisted on strict compliance with Rule 11. In *Woodward v. United States,* 426 F.2d 959, 962–63 (3d Cir. 1970), we stated:

Routine questioning or a single response by the defendant that he understands the [nature of the] charge is insufficient. To satisfy itself that the defendant actually does comprehend the charges, the court must explain the meaning of the charge *and what basic acts must be proved to establish guilt.* . . . Because Rule 11 requires that the court address the defendant personally, questioning by the United States Attorney or representation of the defendant by counsel will not discharge the court's duty to interrogate the defendant itself.

(Footnotes omitted and emphasis added). *Accord, Paradiso v. United States,* 482 F.2d 409 (3d Cir. 1973); *United States v. Cantor,* 469 F.2d 435 (3d Cir. 1972); *United States v. Zampitella,* 416 F.Supp. 604 (E.D.Pa. 1976).

In view of the clear prescription of these cases that the court *personally* inform the defendant of the nature of the charges and the acts which would render him guilty, we must hold that the district court's reliance on appellant's private reading of the indictment and discussions of it with his attorney constitutes error. The court correctly noted that "even reading the indictment to a defendant can satisfy this requirement." Appendix at 5B. We do not quarrel with the court's conclusion that additional explanation of the charge is discretionary and may take into account the totality of the circumstances. *Id.* However, prior decisions of this court preclude us from permitting the district court to abdicate to the appellant and his attorney responsibility for minimal compliance with Rule 11.

### III.

While we conclude that the district court did not comply with the requirements of Rule 11, we must recognize that this appeal is a § 2255 collateral attack on the plea rather than a direct appeal from the judgment of conviction. The government urges us to adopt a "more relaxed" standard of review in the § 2255 context. Appellee's Brief at 6. Its contention is that a litigant who did not appeal his conviction should be required, in the context of a later collateral attack, to demonstrate prejudice flowing from the asserted technical error. *Id.* at 7.

Indeed, *Davis v. United States,* 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974), requires that a different standard be applied in the collateral proceeding than would control the direct appeal. *Davis* suggests that collateral relief is not available "in the absence of any indication that the defendant was prejudiced" or that the error of law was a "fundamental defect which inherently results in a complete miscarriage of justice." *Id.* at 346, 95 S.Ct. at 2305. The cases on which we rely in deciding that the district court failed to satisfy Rule 11 requirements were decided before *Davis;* it is clear that *Davis* emphasizes the necessity of considering whether the defendant suffered prejudice.

Several courts of appeals have adopted a two-tiered standard in the light of *Davis* and have denied collateral relief notwithstanding violation of Rule 11. Foremost is

*Del Vecchio v. United States,* 556 F.2d 106 (2d Cir. 1977), notable for its analysis of the differing policies predominating in direct and collateral review. The commendable policy of insuring "that a defendant acted voluntarily and knowledgeably before taking the grave step of pleading guilty and waiving various constitutional rights" should be strictly enforced on direct appeal because violation of the policy will result in the "modest" social price of a short delay caused by allowing the defendant to re-plead. *Id.* at 109. "On the other hand, rigid enforcement of the Rule many years after the plea has been taken erodes the principle of finality in criminal cases and may allow an obviously guilty defendant to go free because it is impossible, as a practical matter, to retry [*sic*] him. . . . This is not a result that commends itself to many people, including judges." *Id.* The court then held that "a defendant must at least show prejudice affecting the fairness of the proceedings or the voluntariness of the plea in order to succeed in a collateral attack based upon a Rule 11 violation." *Id.* at 111. The violations found in *Del Vecchio* all centered around failure to inform the defendants of potential sentence and parole terms. Because "the sentence imposed on Del Vecchio—15 years imprisonment and three years special parole—was substantially less than the total of 210 years he was advised was the possible maximum sentence," the court concluded that Del Vecchio was not prejudiced, noting "no case in this circuit in which a guilty plea has been vacated on collateral attack for failure to advise of a special parole term where the prison sentence, combined with the special parole term, was less than the possible max-

imum of which defendant had been advised." *Id.*

Although we agree with the Second Circuit's choice of the controlling legal precept mandated by *Davis, i. e.,* that there be a showing of prejudice in a § 2255 proceeding, it is apparent that we differ in interpreting the precept. In *Berry v. United States,* 412 F.2d 189 (3d Cir. 1969), anticipating the rule that would later be announced in *Davis,* we rejected the notion that the defendant sustained no prejudice because he received a lighter sentence than the erroneously stated possible maximum. Indeed, the trial court in *Berry* had adopted the conclusion later to be reached in *Del Vecchio* and we refused to accept it:

> The court's reasoning is based on a false conception of "prejudice." Whether prejudice resulted from the entry of the guilty plea is not measured by the severity or leniency of the sentence imposed; prejudice inheres when an accused pleads guilty, thus convicting himself of a criminal offense, without understanding the significance or consequences of his action.

412 F.2d at 191.

At base, the difference between our court and the Second Circuit is demonstrated by a reference to Roscoe Pound's three-step analysis of the decisional process: (1) choosing the controlling legal precept, (2) interpreting the chosen precept, and (3) applying the precept so chosen and interpreted to the case at hand.[2] We agree as to the first step and disagree as to the second and the third.[3]

## IV.

Thus, although we accept the government's contention that different standards

---

**2.** 4 R Pound, Jurisprudence 5 (1959).

**3.** The government refers to several other courts which have adopted interpretations similar to that of the Second Circuit. The Rule 11 violation in *McRae v. United States,* 540 F.2d 943 (8th Cir. 1976), was also related to advice on potential sentences. After interpreting *Davis, supra,* to require a showing of prejudice, the court denied relief because "the maximum period of incarceration would be . . . less than the maximum he had bargained for." *Id.* at 946. Another case cited by the government

is *Bachner v. United States,* 517 F.2d 589 (7th Cir. 1975). Again, the defendant was adequately advised as to the nature of the charges but was not properly informed of a mandatory special parole term. The court denied relief, *holding that the defendant was not prejudiced* since "[t]he sentence he received was substantially below the maximum he had been told he could receive." *Id.* at 597. Similar facts and result can be found in *United States v. Hamilton,* 553 F.2d 63 (10th Cir. 1977).

may control direct and collateral review, three major considerations lead us to the conclusion that appellant here was sufficiently prejudiced by the Rule 11 violation to meet the *Davis* requirement that prejudice be shown in a § 2255 proceeding.

### A.

First, in an effort to clarify what constitutes a sufficient showing of prejudice to justify collateral relief, we find some guidance in the recent historical development of the law relating to acceptance of guilty pleas. Prior to *McCarthy, supra,* review of a guilty plea colloquy was governed by precisely the same precepts now applicable under *Davis* on collateral review—a prejudicial Rule 11 violation had to be established to justify relief. *Berry v. United States, supra,* as heretofore observed, was predicated on a showing of prejudice, and was not based on the application of the *McCarthy per se* rule.[4] In *Berry* we discussed the manner in which a defendant may be prejudiced when a trial court fails to ascertain that he understands the nature of the charge and the consequences of the plea. There we did not look to see whether the sentence imposed exceeded the maximum Berry was led to expect; we looked to see whether he fully understood the consequences of his plea. Because he did not, his entry of a guilty plea, "convicting himself," was inherently prejudicial regardless of the sentence imposed.

**4.** Procedurally, Berry was before this court in precisely the same posture as Horsley; both alternatively petitioned for § 2255 relief and moved to withdraw a guilty plea under F.R. Crim.P. 32(d).

**5.** Rule 11(c)(1) provides:

*(c) Advice to Defendant.* Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform him of, and determine that he understands, the following:

(1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law;
. . . .

■ Applying the *Berry* rationale to this case, since the record of the colloquy does not disclose that Horsley fully comprehended the nature of the charge, we hold that his guilty plea, convicting himself of a criminal offense, was inherently prejudicial.

### B.

Next, we regard as significant the distinction between the dual requirements of Rule 11(c)(1) that the defendant understand the nature of the charge and that he be apprised of the parameters of potential penalties.[5] An understanding of the nature of the charge requires an explanation of "what basic acts must be proved to establish guilt." *Woodward, supra,* 426 F.2d at 962. Because the nature of the charge so intimately relates to the fundamental issue of guilt, we cannot permit dilution of our mandate that the "nature of the charge" requirement of Rule 11 be strictly satisfied. Particularly where the charge is the inchoate crime of conspiracy, an explanation of the nature of the charge and the acts constituting guilt is fundamental to the achievement of justice. This is not a case of simple assault where we might expect a defendant to have a fairly clear grasp of the nature of the crime. Nor do we adopt the Eighth Circuit's approach in *McRae, supra* note 4, 540 F.2d at 946–47, leaning on McRae's representation by privately retained counsel to support a finding that the defendant suffered no prejudice.[6]

*Del Vecchio, McRae, Bachner,* and *Hamilton, supra,* all addressed violations of the Rule 11(c)(1) requirement that defendant understand "the maximum possible penalty provided by law."

**6.** The district court, in denying appellant's petition for § 2255 relief, relied in part on the gratuitous affidavit of appellant's trial counsel averring his "belief that Mr. Horsley understood the nature of the conspiracy count" at the time of his plea. App. at 6B, 18B. It is precisely to avoid extra-judicial impressions as to whether a defendant "understood" that we insist the "understanding" appear in the record; that the defendant, on the record, be apprised of facts that constitute commission of a crime.

The required advice concerning the range of possible sentences stands on a somewhat different footing. We note that Rule 11 was amended in 1975 to eliminate the former requirement that the "consequences" of a guilty plea be explained to the defendant. The amendment of Rule 11(c)(1) narrows the relevant consequences to the "mandatory minimum penalty," if any, and the "maximum possible penalty" that may be imposed at sentencing. Moreover, the *consequences* of a guilty plea are collateral to the paramount issue of guilt or innocence. We do not mean to derogate the extreme importance to the defendant of knowing the range of potential sentences. *Berry, supra,* held that the defendant was prejudiced by the court's failure to explain that he would be ineligible for parole. That opinion clearly expresses our view that the defendant must be

> made aware of the outer limits of punishment. At the very least, this means that he must be apprised of the period of required incarceration. Except for capital punishment, no other consequence can be as significant to an accused as the period of possible confinement.

*Berry, supra,* 412 F.2d at 192. But it must nevertheless be recognized that consideration of the penalty cannot take precedence over, and require more procedural safeguards than, assurance that the defendant comprehends the basic acts which must be proved to establish guilt.

### C.

Finally, nine years after the decision of *McCarthy v. United States, supra,* we do not believe that *Davis* requires or permits us to abdicate our supervisory responsibility to the district courts of this circuit. Eight years after our decision in *Woodward, supra,* where we unequivocally required the court personally to explore the inquiries relevant to acceptance of a guilty plea, we do not believe the interests of justice are served by tolerating or condoning failure to implement Rule 11. Strict and consistent adherence to the requirements of Rule 11 will facilitate disposition of post-conviction assertions of error in the change of plea

proceeding because the record will provide a clearer answer to any objections raised. As this court recently observed:

> Although insistence upon adherence to the inquiry . . . may appear to some to require compliance with an empty ritual, it nonetheless brings us one step closer to the elusive goal of assuring that there has been in fact a voluntary plea. . . . [F]ailure to follow such guidelines tends further to embroil trial courts, and ultimately the appellate courts, in § 2255 litigation which might otherwise be avoided.

*Brown v. United States,* 565 F.2d 862, 863–64 (3d Cir. 1977). To the criticism that our decision exalts form over substance, we respond by repeating these words of the Supreme Court:

> It is, therefore, not too much to require that, before sentencing defendants to years of imprisonment, district judges take the few minutes necessary to inform them of their rights and to determine whether they understand the action they are taking.

*McCarthy v. United States, supra,* 394 U.S. at 472, 89 S.Ct. at 1174.

### V.

Horsley's further claim that he was not advised of the possible consequences of his plea is without merit. The district court informed Horsley that he could be sentenced to a maximum of 15 years, that he could be fined, and "in addition, because it does involve narcotics, there is a special parole term of at least three years . . . ." Appendix at 12B. This court noted in *Kincade v. United States,* 559 F.2d 906, 907 n.1 (3d Cir. 1977), that Rule 11 was amended in 1975 to "eliminate the requirement that the court explain the 'consequences' of a guilty plea to the defendant before accepting his plea." The current rule requires that the judge inform the defendant and determine that he understands "the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law." The special parole term is part of the maximum possible penalty. *See United*

*States v. Crusco,* 536 F.2d 21 (3d Cir. 1971) (special parole term is part of maximum "sentence" and maximum "punishment."); *Holland v. United States,* 427 F.Supp. 733, 740 n.11 (E.D.Pa.1977) ("We include within the notion of 'maximum penalty' the requirement that a drug defendant be warned of the possibility of an unlimited consecutive 'special parole term' under 21 U.S.C. § 841(c).") The district court here adequately explained the special parole term.

For the foregoing reasons, the judgment of the district court will be reversed and the case remanded with instructions that appellant's sentence be vacated and his plea withdrawn so that he may be permitted to plead anew.

HIGGINBOTHAM, Circuit Judge, dissenting.

The majority extensively analyzes whether the error committed here was prejudicial. I agree that if there were error here, it would be prejudicial. I conclude, however, that no error was committed. From my view, the majority has failed to heed the admonition that "matters of reality and not mere ritual should be controlling." *McCarthy v. U. S.,* 394 U.S. 459, 467 n. 20, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969). Therefore, I dissent.

As the majority notes, before a district court judge can accept a guilty plea in accordance with Rule 11, the court "must address the defendant personally in open court and inform him of, and determine that he understands . . . the nature of the charge to which the plea is offered." I would conclude, on this record, that the district court here adequately discharged its obligations under Rule 11.

The excerpt from the plea hearing which is included in the majority opinion reveals that the judge below:

(1) informed the defendant that he was pleading guilty to an indictment charging him with participation in a "conspiracy with respect to heroin;"

(2) determined that the defendant had gone over the indictment with his attorney to whom he revealed all relevant facts; and

(3) received an affirmative response to the direct question, "Do you fully understand the charges against you?"

I believe that this inquiry meets the requirements set by Rule 11. I believe further that no case decided by this court is to the contrary.

The majority relies primarily on *Woodward v. U. S.,* 426 F.2d 959 (3d Cir. 1970). The district court there made *no inquiry at all* into the defendant's understanding of the charges.[1] Instead it relied on the prosecutor's questioning of the defendant. There is language in that opinion to the effect that the court must describe the "basic acts" that constitute the crime. Given the total failure of the judge to personally instruct the defendant as to the nature of the charges, however, any advice as to the exact content of the judge's instruction must be considered *dictum.*

Also, the requirement of describing the "basic acts" has never been read as expansively in this circuit as the majority does here. In *Paradiso v. U. S.,* 482 F.2d 409 (3rd Cir. 1973), the second case from this circuit relied upon by the majority, this court held that the district court's reading of the indictment to the defendant was an adequate explanation of the charges. The court there left the question of whether additional explanation was necessary to the district court's discretion. The court also stated that the necessary inquiry under Rule 11 varies from case to case. In the last case of this circuit relied on by the majority, *U. S. v. Cantor,* 469 F.2d 435 (3rd Cir. 1972), the judge's explanation of the charge to which the plea was entered was found to have been actually *misleading.* Thus *Cantor* does not deal with the question

---

1. Likewise, in *McCarthy, supra,* no inquiry at all was made by the district court into the defendant's understanding of the charges. 394 U.S. at 464, 472–4, 89 S.Ct. 1166 (Appendix A).

of how much explanation is necessary if that explanation is accurate.

In analyzing the sufficiency of the explanation here, I take as my point of departure the Supreme Court's admonition in *McCarthy, supra,* and Judge Rosenn's instruction in *Paradiso, supra,* at 415, that matters of reality rather than mere ritual must control. As a matter of reality, if the reading of the indictment in *Paradiso* is sufficient to comply with Rule 11, that rule has been complied with here, where the defendant responded affirmatively to the question: "Do you understand the indictment charges you with conspiracy with respect to heroin, and that is the count you are pleading to?" and where it was judicially determined that the defendant had read the indictment, that the defendant understood the indictment and that he had discussed it with his attorney. Despite this record, the majority vacates the guilty plea and the realistic issue becomes: What else should the trial judge have done which would have made a difference in the defendant's understanding of the charge? Would additional questioning by the judge or a perfunctory reading of the indictment be more a matter of ritual or of real significance? Of course, the indictment could have been read, but it is difficult to believe that the defendant would thereby be better prepared for the decision to enter a guilty plea than he was by the present record.

In *Henderson v. Morgan,* 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976), the Supreme Court granted a state prisoner's *habeas* petition because he was not adequately informed of the nature of the charges. The Court responded to the anticipated criticism that the decision would result in numerous collateral attacks by stating, "Normally, the record contains either an explanation by the trial judge, or at least a representation by defense counsel that the nature of the offense has been explained to the accused." 426 U.S. at 647, 96 S.Ct. at 2258. Although *Henderson* was not decided under Rule 11, it is a strong indication that a district court

judge may discharge his duty to inform the defendant of the nature of the charges by describing the charge generally and determining that the defendant had discussed the charge with counsel.

I am not suggesting that the procedure here would be adequate in all cases. I am suggesting only that it is *not inadequate* in all cases. Therefore we must look to the specific defendant, the specific record and the specific indictment to determine whether the inquiry met Rule 11 standards.

The defendant here pled guilty to a charge of conspiring to distribute and possess, with intent to distribute, heroin. One of the overt acts alleged was that the defendant received a quantity of heroin in Pittsburgh from a specific co-conspirator on a specific date. Although I am well aware of the complexities that conspiracy prosecutions may present, I believe that the charges here were sufficiently clear and specific that the defendant, a 31 year old man who had completed the eleventh grade, could understand them with little difficulty. Defendant was no novice to the federal courts; at the time he entered his guilty plea he was serving concurrent six and two year sentences which had been imposed by Judges Louis Rosenberg and Barron McCune of the District Court for the Western District of Pennsylvania. The district court, by referring to the charge as a conspiracy with respect to heroin, certainly gave less than an exhaustive explanation of the charges. But given this defendant and this indictment and the defendant's response that he had discussed the charges with his attorney with whom he was satisfied and that he did understand the charges, I believe the district court adequately explained to the defendant and determined that he understood the nature of the charges.

The majority quotes from this court's decision in *Brown v. U. S.,* 565 F.2d 862, 863–64 (3rd Cir. 1977) in order to suggest that the result it reaches will help assure that future pleas will be voluntary and that

the result will decrease the need for litigation of § 2255 claims. I have already expressed my view that the result reached by the majority is not, as a matter of reality, responsive to the need for determining actual understanding and voluntariness. I must also express my concern that the result reached by the majority may increase rather than decrease litigation of this sort. Once an explanation of the elements of a crime is required in every instance, the ineluctable consequence will be a stream, if not a flood, of cases challenging the completeness of the explanation, demanding that more and more subtleties of the criminal law be included within that explanation and then charging that the district court has not quite accurately set forth these nuances. At least one court has already suggested that the explanation of the charges in a Rule 11 hearing should be similar to jury instructions. *See U. S. v. Coronado,* 554 F.2d 166, 172 (5th Cir. 1977), *cert. denied,* 434 U.S. 870, 98 S.Ct. 214, 54 L.Ed.2d 149 (1977). The majority's construction of the duty placed on district court judges by Rule 11 to explain the nature of the charges may well lead to the same type of morass that courts faced under the prior version of Rule 11 that required district judges to explain the "consequences" of the plea.

In conclusion, I would hold, on this record, that the district court adequately explained and determined that the defendant understood the nature of the charges against him. In this case ritual has been substituted for reality.